**Affirmed and Opinion filed October 13, 2016.**



In the

# Fourteenth Court of Appeals

## NO. 14-14-00706-CV

**ANGLO-DUTCH PETROLEUM INTERNATIONAL, INC., AND ANGLO-DUTCH (TENGE), LLC, Appellants/Cross-Appellees**

**V.**

**GREENBERG PEDEN, P.C., AND GERARD J. SWONKE, Appellees/Cross-Appellants**

**On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2004-20712**

## O P I N I O N

This is our second opportunity to review this case. Previously, we affirmed the trial court's January 2007 original final judgment. The January 2007 judgment was based on jury findings that the October 2000 contingency fee agreement at

issue was between client Anglo-Dutch Petroleum International, Inc.[1] and attorney Gerard J. Swonke individually, that Anglo-Dutch breached the fee agreement, and Anglo-Dutch owed Swonke $1,000,000 for such breach. The trial court held a bench trial on and awarded Swonke attorney's fees. Anglo-Dutch appealed from the January 2007 judgment, which we affirmed.

The Texas Supreme Court granted Anglo-Dutch's petition for review, concluding that the fee agreement was unambiguous and plainly one with Greenberg Peden, P.C., instead of with Swonke individually. *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 452–53 (Tex. 2011). The Court reversed our judgment and remanded to the trial court for further proceedings. *Id.* at 453.

On remand, the parties all moved the trial court to enter judgment. The trial court held a jury trial on Anglo-Dutch's attorney's fees. The trial court issued its final judgment in May 2014, ordering that Anglo-Dutch pay Swonke (by assignment from Greenberg Peden) $306,000 plus $42,127.40 in prejudgment interest, that Anglo-Dutch take nothing on its claim for attorney's fees, and that Anglo-Dutch pay postjudgment interest on the amount of $348,127.40 at the rate of 8.25% from the date of the original final judgment until paid. Anglo-Dutch appealed, and Greenberg Peden and Swonke cross-appealed. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Anglo-Dutch was primarily represented in the underlying matter[2] by the firm McConn & Williams. During the litigation, the firm Greenberg Peden dissolved

---

[1] Anglo-Dutch (Tenge) L.L.C., an affiliate of Anglo-Dutch Petroleum International, Inc., is also a plaintiff and an appellant. As has consistently been the case throughout, we refer to the appellants collectively as "Anglo-Dutch."

[2] The underlying matter was No. 2000–22588, *Anglo–Dutch (Tenge), et al. v. Ramco, et al.*, in the 151st Judicial District of Harris County, Texas.

and Swonke moved to McConn & Williams, where he continued to work on the underlying matter. The underlying matter was tried and in April 2004 ultimately settled for $51 million (hereinafter, the "Halliburton settlement"). *See id.* at 449. Greenberg Peden assigned "all rights it has in and under" and "all of its interest in and under" the fee agreement to Swonke. A dispute ensued over whether the fee agreement was with Swonke individually or Greenberg Peden and over the proper calculation of the amount Anglo-Dutch owed.

Anglo-Dutch filed suit against Swonke and Greenberg Peden seeking a declaratory judgment in connection with the fee agreement.[3] Swonke counterclaimed for declaratory judgment and breach of contract as to himself individually.[4] In May 2006, Anglo-Dutch offered Greenberg Peden a check for $323,650.53, representing the principal sum owed under the fee agreement, plus interest from the time of the Halliburton settlement. Greenberg Peden refused the check. The jury found that the fee agreement, which the trial court had found to be ambiguous, was between Anglo-Dutch and Swonke individually. The jury also found that Anglo-Dutch failed to comply with the fee agreement and awarded Swonke $1,000,000 in contract damages. The parties held an evidentiary hearing on attorney's fees, and the trial court issued its final judgment in January 2007.

The Texas Supreme Court explicitly concluded that the fee agreement at issue was unambiguous and was between Anglo-Dutch and Greenberg Peden. *Id.* at 452–53. Accordingly, the Court reversed the judgment of our court, which had affirmed the trial court's January 2007 judgment, and remanded for further

---

[3] Anglo-Dutch also asserted a claim for breach of fiduciary duty against Swonke and requested fee forfeiture. The original jury found that Swonke complied with his fiduciary duty.

[4] Swonke also asserted that Van Dyke committed fraud and Anglo-Dutch was vicariously liable. They original jury found that Van Dyke did not commit fraud.

3

proceedings. *Id.* at 453.[5]

Post-remand, Anglo-Dutch moved for entry of final judgment and attorney's fees. Anglo-Dutch requested the trial court declare that the fee agreement is between Anglo-Dutch and Greenberg Peden, the trial court render a take-nothing judgment against Swonke on his breach-of-contract claim, and the trial court eliminate the contract damages and attorney's fees awarded to Swonke. In addition, Anglo-Dutch requested that the final judgment take into consideration that Anglo-Dutch was the prevailing party on its declaratory judgment action and should be awarded its reasonable and necessary attorney's fees of $415,000 under section 37.009, *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2013), based on a stipulation in conjunction with a hearing on attorney's fees held in January 2007. Anglo-Dutch acknowledged owing Greenberg Peden under the fee agreement and stated it would honor its May 2006 tender in the amount of $323,650.53 ($293,338.85 in principal owed plus interest from the date of the Halliburton settlement to the date of the tender). Anglo-Dutch requested that the trial court net out the amounts and render judgment that Swonke and Greenberg Peden pay Anglo-Dutch $91,349.47.

Swonke and Greenberg Peden filed a motion to render judgment. They argued that Greenberg Peden had assigned its interest in the fee agreement to Swonke, under the fee agreement's unambiguous formula Anglo-Dutch owed Swonke $1,530,000, and Anglo-Dutch was not entitled to any attorney's fees to offset what it owes under the fee agreement.

Anglo-Dutch filed a brief in support of its entry of judgment on remand.

---

[5] The Texas Supreme Court's opinion provides additional background facts and procedural details. *See Anglo-Dutch*, 353 S.W.3d at 446–49.

4

Anglo-Dutch asked the trial court to resolve how much money Greenberg Peden was entitled to receive under the fee agreement and Anglo-Dutch was entitled to receive in attorney's fees as a prevailing party in its declaratory judgment action. Swonke and Greenberg Peden filed a brief in support of their motion to render judgment. In light of Greenberg Peden's assignment of its interest under the fee agreement to Swonke, they requested the trial court render judgment in favor of Swonke on his declaratory judgment and breach-of-contract claims in the amount of $1,530,000, plus attorney's fees.

The trial court, "ha[ving] been asked to determine the correct calculation of the attorneys' fees provision under the October 16, 2000, Fee Agreement," issued an order calculating that the attorney's fees due to Greenberg Peden (and now Swonke by way of assignment) were $306,000. After the trial court issued this order, Anglo-Dutch amended its motion for entry of judgment and attorney's fees and requested that the trial court credit the award to Greenberg Peden against Anglo-Dutch's attorney's fees.

The parties filed for summary judgment. The trial court denied Swonke's and Greenberg Peden's motion and granted Anglo-Dutch's motion, ordering that: Swonke take nothing on his contract claim; Swonke take nothing on his section 38.001 attorney's fees claim, *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2013); Swonke take nothing on his declaratory judgment claim; Swonke was precluded from recovering section 37.009 attorney's fees, *see id.* § 37.009; and Anglo-Dutch was entitled to attorney's fees under section 37.009 if they were equitable and just.

Swonke and Greenberg Peden filed a rule 166 motion for ruling on question of law regarding Anglo-Dutch's waiver, abandonment, and forfeiture of its attorney's fees claim. The trial court issued an order ruling that: subject to being

5

proven up, Anglo-Dutch's original trial fees have been agreed to as reasonable and necessary and the trial court would not exceed an award over $290,000 pursuant to the stipulation on "original trial fees"; pursuant to the stipulation, Anglo-Dutch's reasonable and necessary appellate attorney's fees were $75,000 to the court of appeals and $50,000 to the Texas Supreme Court; and the trial court would entertain proof of additional reasonable and necessary attorney's fees incurred by Anglo-Dutch post remand.

The trial court held a jury trial on Anglo-Dutch's attorney's fees. Anglo-Dutch requested that the jury award it $444,000 in attorney's fees for the original trial, $265,000 in fees for the prior appeal to the court of appeals, $375,000 in fees for the appeal to the Texas Supreme Court, $240,000 in fees for trial post remand, $200,000 in fees for another appeal to the court of appeals, $125,000 in fees for another appeal to the Texas Supreme Court, and a total of almost $115,000 in costs to date. The jury awarded Anglo-Dutch no attorney's fees for representation for the original trial. The jury awarded Anglo-Dutch no fees for representation for the prior appeal to the court of appeals and $50,000 for representation for the prior appeal to the Texas Supreme Court. The jury awarded Anglo-Dutch no fees for any aspect of post-remand representation. The jury awarded $12,000 in costs to Anglo-Dutch with regard to the prior appeal, but no costs otherwise.

Swonke and Greenberg Peden filed a motion to rule as a matter of law that Anglo-Dutch waived all attorney's fees and costs and to disregard the jury's findings awarding Anglo-Dutch's prior appellate attorney's fees and costs. Anglo-Dutch filed a motion for judgment notwithstanding the verdict, arguing that it conclusively established approximately $1.5 million of its attorney's fees and costs.

In its final judgment, the trial court found that an award of attorney's fees or

6

costs to Anglo-Dutch for its declaratory judgment action would not be equitable or just. The trial court explained that it calculated the fees Anglo-Dutch owed to Greenberg Peden under the fee agreement, and that the amount owed to Greenberg Peden (and now Swonke by way of assignment) was $306,000. The trial court ordered that: Anglo-Dutch pay Swonke $306,000; Swonke take nothing on his claims for breach of contract, section 38.001 attorney's fees, declaratory judgment, fraud, and exemplary damages; Swonke was precluded from recovering section 37.009 attorney's fees; Anglo-Dutch pay Swonke $42,127.40 in prejudgment interest; Anglo-Dutch take nothing on its claim for attorney's fees; Swonke and Greenberg Peden pay Anglo-Dutch's costs; and Anglo-Dutch pay postjudgment interest on the amount of $348,127.40 at the rate of 8.25% from the date of the original final judgment until paid.

Anglo-Dutch brings three issues: (1) the trial court erred in awarding the amount Anglo-Dutch owed under the fee agreement to Swonke, as well as pre- and postjudgment interest on that amount; (2) even if it were proper to award interest, those amounts must be reduced; and (3) the trial court abused its discretion in denying Anglo-Dutch its attorney's fees. Swonke and Greenberg Peden bring four cross-issues: (1) the trial court erred in its calculation of the amount owed under the fee agreement and should have awarded Swonke $1,530,000 instead of $306,000; (2) the trial court erred by rendering judgment against and refusing to render judgment for Swonke on his claims for attorney's fees; (3) the trial court erred by rendering judgment against and refusing to render judgment for Swonke on his breach-of-contract claim; and (4) the trial court erred by rendering judgment that conflicted with the original final judgment on interest and costs.

## II. ANALYSIS

Where appropriate, we consider the parties' related issues and cross-issues

7

together.

## A. The trial court's award to Swonke

In its final judgment, the trial court declared that Anglo-Dutch owed Greenberg Peden (and Swonke by way of assignment) $306,000 under the fee agreement. The trial court further ordered Anglo-Dutch to pay Swonke that amount, as well as $42,127.40 in prejudgment interest and postjudgment interest on the amount of $348,127.40 at the rate of 8.25% per annum, compounded annually, from the date of the original final judgment until paid.

### 1. Trial by consent

As a threshold matter, we address Anglo-Dutch's contention that the trial court's command that it pay Swonke $306,000 plus interest "is void." Anglo-Dutch argues that the trial court only granted relief on its request for declaratory judgment—and such request did not and could not legally seek a compensatory award for Swonke. Anglo-Dutch emphasizes that it only requested declarations regarding whom the fee agreement was with and the proper method of calculation, not the amount of Greenberg Peden's contingent fee. According to Anglo-Dutch, the trial court lacked jurisdiction to issue a final judgment that did not conform to the relief Anglo-Dutch requested.

Swonke and Greenberg Peden respond that Swonke's counterpetition—which sought a declaration that his interpretation of the fee agreement as being one personally with him was correct, and requested recovery of individual damages based on Anglo-Dutch's breach of the fee agreement, including pre- and postjudgment interest—supports the trial court's judgment awarding him the fee and interest as Greenberg Peden's assignee.[6] Swonke and Greenberg Peden

---

[6] While Swonke pleaded for "recovery of all damages caused by Anglo-Dutch's breach

8

alternatively contend that the parties tried by consent the amount owed to Greenberg Peden under the fee agreement and payable to Swonke by assignment.

"A trial court cannot grant relief to a party in the absence of pleadings supporting that relief, unless the issue has been tried by consent." *In re Park Mem'l Condo. Ass'n, Inc.*, 322 S.W.3d 447, 450–51 (Tex. App.—Houston [14th Dist.] 2010); *see also Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) ("[A] judgment must be supported by the pleadings and, if not so supported, it is erroneous. . . . Thus, a party may not be granted relief in the absence of pleadings to support that relief."). Accordingly, a trial court's judgment must conform to the pleadings. Tex. R. Civ. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity.").

"There are, however, exceptions to rule 301." *Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 779 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). Unpleaded claims or defenses that are tried by express or implied consent are treated as if they had been raised by the pleadings. *Owens v. Mason*, No. 14-12-00207-CV, 2013 WL 2382836, at *3 (Tex. App.—Houston [14th Dist. May 30, 2013, no pet.) (mem. op.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 495 (Tex. 1991)); *see In re Park Mem'l Condo.*, 322 S.W.3d at 450–51 & n.4. "An unpleaded issue may be deemed tried by consent if evidence on the issue was developed under circumstance[s] indicating that the parties understood the issue was part of the case and the other party failed to properly complain." *Owens*, 2013 WL 2382836, at *3 (citing Tex. R. Civ. P. 67; *Frazier v. Havens*, 102 S.W.3d 406,

---

of contract" and for "pre-judgment and post-judgment interest as allowed by law," in his live counterpetition Swonke expressly pleaded his "agreement with Anglo-Dutch was his own personal contract that was independent of Greenberg Peden."

411 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). To determine whether the issue was tried by consent, we examine the record as a whole not for evidence of the issue, but rather for evidence of trial of the issue. *See Dugas v. Dreyer*, No. 14-96-00336-CV, 2004 WL 438598, at \*2 (Tex. App.—Houston [14th Dist.] Mar. 11, 2004, no pet.).

Although the trial court granted a take-nothing judgment against Swonke's individual claims and no party pleaded verbatim for the particular relief reflected in the final judgment, there is ample evidence in the record indicating that the parties clearly tried by consent the amount Anglo-Dutch owed Greenberg Peden under the fee agreement plus interest as payable to Swonke by assignment.

Post-remand, Swonke and Greenberg Peden moved the trial court to render judgment, arguing that Swonke was entitled to the amount due under the fee agreement plus interest as Greenberg Peden's assignee pursuant to the April 2004 assignment and release agreement signed by Swonke and Greenberg Peden. Swonke and Greenberg Peden, as well as Anglo-Dutch, presented this assignment to the trial court. Anglo-Dutch expressly requested that the trial court resolve "[h]ow much money is G[reenberg] P[eden] entitled to receive from Anglo-Dutch pursuant to the terms of the Fee Agreement." Anglo-Dutch also requested that the trial court enter judgment that Greenberg Peden "is entitled to damages in the amount of $323,650.53"—the amount Anglo-Dutch acknowledged owing and offered to pay Greenberg Peden in its May 2006 tender for damages and prejudgment interest based on the fee agreement. With reference to the assignment by Greenberg Peden to Swonke,[7] Anglo-Dutch stated: "If this means that Anglo-

---

[7] In its opinion, the Texas Supreme Court stated: "Greenberg Peden assigned its interest in the Fee Agreement to Swonke. The assignment, which Swonke prepared and signed, recited that 'Swonke executed [the Fee Agreement] on behalf of (and while affiliated with) Greenberg Peden as an Of Counsel.'" *Anglo-Dutch*, 352 S.W.3d at 449.

10

Dutch should pay the $293,338.85 plus interest to Swonke instead of G[reenberg] P[eden], so be it as long as G[reenberg] P[eden] approves." The parties provided extensive briefing and arguments regarding proper calculation of the contingency fee Anglo-Dutch agreed to pay Greenberg Peden. In its calculation order, the trial court stated that it had been asked to determine the correct calculation of the fees provision under the fee agreement and had determined "that the attorneys' fees due to Greenberg Peden (and now Swonke by way of assignment) are $306,000.00." Anglo-Dutch then requested that the trial court credit the $306,000 award plus interest to Greenberg Peden (and now Swonke by way of assignment) against the attorney's fees due to Anglo-Dutch under its declaratory judgment claims. Anglo-Dutch further requested that the trial court calculate prejudgment interest on the award in light of Anglo-Dutch's May 2006 unconditional tender of $293,338.85 to Greenberg Peden.

During the trial on Anglo-Dutch's attorney's fees, trial counsel for Anglo-Dutch provided testimony about the assignment. He discussed the trial court's calculation order and agreed that it meant whatever money Anglo-Dutch owed to Greenberg Peden under the fee agreement was actually due to Swonke by virtue of the assignment. Anglo-Dutch's proposed judgments expressly included the declaration of and recovery by and payment of $306,000 plus interest to Swonke (by way of assignment). Moreover, Anglo-Dutch never complained to the trial court about the lack of pleadings to support the $306,000 award to Swonke by assignment. *Compare Estate Land Co. v. Wiese*, No. 14-13-00524-CV, 2015 WL 1061553, at *6 (Tex. App.—Houston [14th Dist.] Mar. 10, 2015, pet. denied) (mem. op.) (trial by consent where party did not complain about lack of pleadings to support partition and sale of parcel), *and C.A. Walker Constr. Co. v. J.P. Sw. Concrete, Inc.*, No. 01-07-00904-CV, 2009 WL 884754, at *3–4 (Tex. App.—

11

Houston [1st Dist.] Apr. 2, 2009, no pet.) (mem. op.) (same for release defense), *with In re Park Mem'l Condo.*, 322 S.W.3d at 451 n.4 (party repeatedly objected to lack of pleadings supporting requested relief). Only after final judgment issued, in its motion to modify, did Anglo-Dutch complain to the trial court that because Swonke did not prevail on his individual claims he was not entitled to prejudgment interest. *See Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 87 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (governing person status tried by consent—raising pleading deficiency in motion for new trial was "too late"); *see also Hartford Fire Ins. Co.*, 287 S.W.3d at 780 (fraud issue tried by consent despite defendant's pleading objection first raised at charge conference).

We conclude that the parties tried by consent what proper amount Anglo-Dutch owed Greenberg Peden under the fee agreement and should pay to Swonke as assignee. Accordingly, the trial court did not err by issuing these portions of its final judgment.

Additionally, Anglo-Dutch argues that the portions of the judgment awarding Swonke by assignment damages and judgment interest constitute an impermissible advisory opinion because the trial court could not grant compensatory relief "on declaratory judgment." We have determined that the judgment sufficiently conformed to the issues tried by consent here. The relief requested and tried by consent was not solely constrained to Anglo-Dutch's declaratory request.

Anglo-Dutch's citation to *Republic Insurance Co. v. Davis*, 856 S.W.2d 158 (Tex. 1993), does not persuade us otherwise. At issue in *Republic Insurance* was how broadly to define affirmative relief for purposes of determining whether offensive use commands the waiver of attorney-client privilege. *See In re Carbo Ceramics Inc.*, 81 S.W.3d 369, 379 (Tex. App.—Houston [14th Dist.] 2002, no

pet.) (discussing *Republic Ins.*, 856 S.W.2d at 164). The *Republic Insurance* Court defined affirmative relief narrowly in circumstances where the plaintiff seeking to protect its privilege only had brought a declaratory judgment claim and all the relief it sought was defensive in nature. *See* 856 S.W.2d at 164.[8] In contrast to *Republic Insurance*, here the parties tried by consent Swonke's request for affirmative relief based on an existing controversy—what he was actually owed by Anglo-Dutch in recovery as payment under the breached fee agreement, with interest, as the assignee of Greenberg Peden's contract. Moreover, the circumstances do not indicate that this fees controversy somehow has been mooted.[9] The trial court did not render an impermissible advisory opinion by its award to Swonke here.

## 2. Prevailing-party status

Anglo-Dutch next asserts that the trial court could not award Swonke pre- and postjudgment interest as a nonprevailing party. Anglo-Dutch again points to the fact that the trial court entered a take-nothing judgment against Swonke individually on his contract and declaratory judgment claims.

In its motion to modify judgment, Anglo-Dutch argued that prejudgment interest is only appropriately awarded to a prevailing party.[10] We agree with Anglo-Dutch that the purpose of pre- and postjudgment interest is to fully compensate the injured party and that such interest represents additional damages

---

[8] We further note the *Republic Insurance* Court expressly stated it was not holding that an action for declaratory judgment could never constitute affirmative relief. 856 S.W.2d at 164 n.12.

[9] *Cf. Robinson v. Alief Indep. Sch. Dist.*, 298 S.W.3d 321, 324–28 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (plaintiff's requests for injunctive and declaratory relief were mooted where no existing or continuing present injury).

[10] Although the record does not reflect that Anglo-Dutch raised this argument as to postjudgment interest, *see* Tex. R. App. P. 33.1, we will also consider it with regard to postjudgment interest.

for lost use of the money due as damages. *See Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 812 (Tex. 2006); *Miga v. Jensen (Miga I)*, 96 S.W.3d 207, 212 (Tex. 2002). However, we disagree that the trial court could not award prejudgment interest here.

The circumstances here presented a situation where client Anglo-Dutch entered into a fee agreement either with law firm Greenberg Peden or Swonke individually. In addition, Greenberg Peden assigned Swonke any interest it had under the fee agreement. Anglo-Dutch did not pay either Greenberg Peden or Swonke under the fee agreement. Where the trial court originally (and erroneously) considered the fee agreement to be ambiguous, the jury was asked to determine who the parties to the agreement were. The jury found that the fee agreement was with Swonke individually, determined that Anglo-Dutch breached the agreement, and awarded Swonke $1,000,000 in damages. The Texas Supreme Court ruled as a matter of law that the fee agreement was with Greenberg Peden, not Swonke. On remand, the parties tried by consent how much Anglo-Dutch owed Greenberg Peden (and Swonke by assignment) in payment under the fee agreement.[11] The trial court declared what Anglo-Dutch owed Greenberg Peden under the fee agreement and awarded payment in the amount of $306,000 to Swonke as assignee.

According to Anglo-Dutch, because Swonke received no affirmative judicial relief, he cannot be considered a prevailing party and is therefore precluded from prejudgment interest. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655–56 n.27 (Tex. 2009). Swonke and Greenberg Peden respond that the prevailing party rule or test as outlined by the Court in

---

[11] No party contended that the appropriate amount Anglo-Dutch owed Greenberg Peden under the fee agreement was $1,000,000. Rather, Anglo-Dutch asserted an amount of $293,339.00, and Swonke and Greenberg Peden asserted an amount of $1,530,000.

14

*Intercontinental Group Partnership v. KB Home Lone Star L.P.* does not apply here. They argue that in *KB Home* the issue was whether the trial court properly could award attorney's fees to plaintiff homebuilder KB Home under a contract which stated that the prevailing party was entitled to attorney's fees where the jury found that KB Home suffered zero damages from the contract breach. There, the Court held that "to prevail, a claimant must obtain actual and meaningful relief, something that materially alters the parties' relationship." *Id.* at 651; *see Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992).

Assuming without deciding solely for purposes of our analysis that *KB Home* applies in this context, this is clearly not a situation where Swonke "got nothing" or "left the courthouse empty-handed." *Cf.* 295 S.W.3d at 655–56. In contrast, the trial court ruled that Swonke by way of assignment was entitled to $306,000 under the fee agreement. The trial court did not rule that, despite any breach of the fee agreement by Anglo-Dutch as to Greenberg Peden, Swonke was entitled to nothing of value. Before the trial court's May 2014 final judgment, Anglo-Dutch had paid nothing to Swonke under the fee agreement. Within the May 2014 judgment, although Swonke's individual claims as pleaded were not successful, Anglo-Dutch was made to answer for the $306,000 that it owed under the fee agreement to Swonke by assignment. The May 2014 judgment therefore constituted "meaningful judicial relief" materially altering the legal relationship among the parties and directly benefiting Swonke. *Cf. id.* at 651, 656; *Farrar*, 506 U.S. at 111–12. As a result, the trial court at the least had discretion to award prejudgment interest to Swonke as a prevailing party. *See SAP Trading Inc. v. Sohani*, No. 14-06-00641-CV, 2007 WL 1599719, at *2 n.5 (Tex. App.—Houston [14th Dist.] June 5, 2007, no pet.) (mem. op.).

Anglo-Dutch further contends that a declaratory judgment ordering payment

15

of a specific amount is not an award of "money damages" and cannot support an interest award, relying on *Mooti v. Aldirawi*, No. 10-12-00161-CV, 2014 WL 2719916 (Tex. App.—Waco June 12, 2014, pet. denied) (mem. op.).  However, *Mooti* does not control here.  *Mooti* did not involve circumstances where the parties tried by consent damages based on an assigned breach of contract; instead, the trial court, pursuant to a stipulation of the parties following a jury trial declaring their respective partnership interests, made a monetary award equal to the values of their interests.  2014 WL 2719916, at *5.

Because Anglo-Dutch did not pay Greenberg Peden the money it owed under the fee agreement, Swonke by assignment lost use of $306,000.  Accordingly, the trial court did not abuse its discretion by awarding Swonke prejudgment interest.  We therefore cannot agree with Anglo-Dutch that an award of prejudgment interest here provides a "windfall" to Swonke and "punishes" Anglo-Dutch.  *See Brainard*, 216 S.W.3d at 812, 814, 816.

We overrule Anglo-Dutch's first issue.

### 3.  Proper amount of fees owed under the agreement

The fee agreement provides:

I agree to assist Anglo-Dutch and that firm in this lawsuit for proportionately the same percentage (20%) of any benefit to McConn & Williams reflected in such agreement. . . . [T]he proportions under which my fees shall be calculated will be the ratio of the hours I have spent or will spend on this matter relative to the hours the attorneys at McConn & Williams have spent or will spend after the date the lawsuit was filed, rounded to the next whole percentage.

The fee agreement further provides as an example:

[I]f McConn & Williams' attorneys spend 1,000 hours on the lawsuit . . . and I spend 90 hours of my time towards the lawsuit, then by rounding up to nearest whole number, I would be entitled to

16

receive from you 2% (10% of 20%) of the gross revenues and other benefits received, if any, from this lawsuit.

On remand, the trial court construed the fee agreement as a matter of law and declared: (1) the numerator in the hours ratio in the fee formula of the fee agreement is the number of hours Greenberg Peden worked on the underlying Halliburton matter and does not include the hours Swonke worked on that matter at McConn & Williams; (2) the hours Swonke worked on the matter at McConn & Williams are included in the denominator in the fee formula of the fee agreement; (3) the fee owed is based on Anglo-Dutch's gross recovery in the Halliburton settlement; and (4) the rounding up to the next whole percentage required by the fee agreement occurs after the hours ratio is determined and before, not after, the hours ratio is multiplied by 20%. Based on the parties' stipulations that Anglo-Dutch's gross recovery was $51,000,000, Swonke worked 277 hours on the matter while at Greenberg Peden, and McConn & Williams' attorneys (including Swonke) worked 11,652 hours on the matter, the trial court calculated and declared that Swonke by assignment was owed $306,000 under the fee agreement:

- Start with hours ratio (Swonke's hours while at Greenberg Peden/Total McConn & Williams hours): 277/11,652 = 0.0237 or 2.37%

- which is then rounded up to the next whole percentage: 0.03 or 3%

- which is multiplied by 20%: 0.03 * 0.20 = 0.006 or 0.6%

- which is multiplied by $51,000,000: 0.006 * $51,000,000 = $306,000.

In their first cross-issue, Swonke and Greenberg Peden challenge the trial court's determination of how to calculate the correct amount of fees owed under the fee agreement. As a threshold matter, however, Swonke and Greenberg argue

17

that Anglo-Dutch "waived the declarations" regarding the fee formula's provisions because the January 2007 judgment denied that relief and that denial was not appealed. Anglo-Dutch brought declaratory judgment claims against Swonke and Greenberg Peden concerning the judicial construction of the fee agreement. Swonke counterclaimed for breach of contract and declaratory judgment against Anglo-Dutch. The trial court ruled that the fee agreement was ambiguous, sent Swonke's contract claim to the jury, and entered judgment on the jury's verdict in favor of Swonke. The trial court also rendered a take-nothing judgment against Anglo-Dutch.

In its prior appeal from the January 2007 judgment, Anglo-Dutch asserted that the fee agreement was unambiguously between Anglo-Dutch and Greenberg Peden and should have been construed as a matter of law, not submitted to the jury for interpretation. In other words, Anglo-Dutch assailed the trial court's actions related to the construction of the fee agreement and in submitting the parties' dispute to the jury. Anglo-Dutch requested reversal of the judgment and rendition that the fee agreement was unambiguously between Anglo-Dutch and Greenberg Peden. Anglo-Dutch also requested rendition on Swonke's contract and declaratory judgment claims, which were based on his proffered interpretation of the fee agreement including the fee formula, and alternatively requested remand.[12] Our court affirmed the January 2007 judgment.

The Texas Supreme Court granted Anglo-Dutch's petition for review and ultimately reversed us, expressly ruling as a matter of law the fee agreement was unambiguous and was between Anglo-Dutch and Greenberg Peden, and "remanded [the case] to the trial court for further proceedings" without expressly

---

[12] Anglo-Dutch requested reversal and rendition in its favor or alternatively remand on its claim for breach of fiduciary duty "as well."

providing any limitation or exclusion. *Anglo-Dutch*, 352 S.W.3d at 453. In those further proceedings, therefore, the trial court was permitted to enter judgment consistent with the Texas Supreme Court's holding while recognizing that Anglo-Dutch had challenged the trial court's rulings and requested reversal of the judgment based on the erroneous designation of the fee agreement as ambiguous and the jury's interpreting the agreement instead of the court as a matter of law. In other words, the trial court could rule and reissue judgment on Anglo-Dutch's declaratory judgment claims in light of the proper interpretation of the fee agreement.

After remand, the parties submitted extensive briefing and the trial court heard argument in connection with the correct calculation of the attorney's fees provision under the fee agreement. The trial court expressly ruled in favor of Anglo-Dutch on three portions of its declaratory judgment claim: who the parties to the fee agreement are, the makeup of the numerator/denominator, and the timing of the rounding. Under these circumstances, we cannot agree that Anglo-Dutch waived its declarations on the fee formula.[13]

As to the merits, Swonke and Greenberg Peden insist that: (1) the numerator used in the fee formula should have included Swonke's hours worked not only at Greenberg Peden (277), but also at McConn & Williams (1,022) for a total of 1,299 hours; and (2) the rounding should have been done after the fees ratio was multiplied by 20%. Under Swonke's and Greenberg Peden's proffered calculation:

- Start with hours ratio (Swonke's hours in total at both Greenberg Peden and McConn & Williams/Total McConn & Williams hours):

---

[13] None of the cases cited by Swonke and Greenberg Peden presents an analogous situation where a declaratory judgment claimant complained on appeal about the trial court's erroneous decision to leave interpretation of an unambiguous contract up to the jury and the resulting take-nothing judgment against the claimant.

19

$$1{,}299/11{,}652 = 0.111 \text{ or } 11\%$$

- which is multiplied by 20%: $0.0111 * 0.20 = 0.0222$ or 2.22%

- which is then rounded up to the next whole percentage: 0.03 or 3%

- which is multiplied by $51,000,000: $0.03 * \$51{,}000{,}000 = \$1{,}530{,}000$.

They argue that the trial court misconstrued the fee agreement by rewriting its plain language in violation of the Texas Supreme Court's opinion. With regard to the numerator in the hours ratio, they argue it would be "illogical" to construe the personal pronouns "I" and "my" as referring to anyone other than Swonke individually. Swonke and Greenberg Peden further insist a reasonable client would have construed the numerator as including all of Swonke's individual hours no matter his firm affiliation. With regard to the rounding provision, they insist the plain language in the example means the rounding up is to take place after the hours ratio is multiplied by 20% and a reasonable client would agree with that construction.

Anglo-Dutch responds that proper construction of the plain language of the entire fee agreement, *see Frost Nat'l Bank v. L. & F. Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005), as confirmed by the Texas Supreme Court's opinion, reasonably means that the numerator only could comprise Swonke's hours while at Greenberg Peden, as the party to the fee agreement. According to Anglo-Dutch, the Texas Supreme Court's analysis explained that the personal pronouns such as "I" and "my" in the fee agreement were "consistently tied to Greenberg Peden." Anglo-Dutch further argues that a reasonable client certainly would not interpret its fee agreement with one firm to provide for its contingency payment to be substantially based on work done by a former attorney of that firm after such

attorney has moved to an entirely different firm, especially when the client has a separate contingency fee agreement in place with that other firm. As to rounding, Anglo-Dutch contends the trial court correctly construed the plain text—the qualifying phrase "rounded to the next whole percentage" applies to the nearest phrase "the ratio of the hours[.]" *See Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). Anglo-Dutch asserts that any explanatory example cannot control over such plain text and that a reasonable client would not rely on a confusing example over the clear text.[14]

We find no merit in Swonke's and Greenberg Peden's position. The trial court properly construed the unambiguous language of the fee agreement in light of the Texas Supreme Court's decision and the reasonable-client perspective.[15] With regard to the numerator in the hours ratio, it is Swonke and Greenberg's interpretation that is directly at odds with the Texas Supreme Court's plain-language interpretation of the unambiguous fee agreement, and in particular how the "inexact" use of personal pronouns otherwise had no bearing on the agreement's being "plainly one with Greenberg Peden":

> On its face, the Fee Agreement is plainly one with Greenberg Peden, not Swonke personally. The clear indicia of the firm letterhead and signature on the firm's behalf are not contradicted by the personal pronouns in the text. Swonke's uses of "I", "me", and "my" indicate that he would himself be working on the matter, which Anglo–Dutch certainly intended, but none suggests that other attorneys and staff at Greenberg Peden would be excluded from the case any more than

---

[14] According to Anglo-Dutch, the example, although it erroneously rounds up the hours ratio of 9% to 10%, is in fact consistent with the plain text as to the timing of the rounding, which is before the multiplication by 20%: "(10% of 20%)."

[15] In its calculation order, the trial court expressly noted that the Texas Supreme Court after extensive briefing and oral arguments has stated the fee agreement was "between Anglo-Dutch and Greenberg Peden," *Anglo-Dutch*, 352 S.W.3d at 453. The trial court further stated; "As such, only Swonke's work while at Greenberg Peden is covered by the Fee Agreement."

they had been from other Anglo–Dutch matters.  Since the fee was contingent on recovery and therefore not based on any attorney's hourly rate, it would presumably make no difference to Anglo–Dutch who besides Swonke worked on the case as long as the fee was computed on his hours.  One use of "I" clearly included the firm: "I will not be responsible for any expenses."  The firm, not Swonke, invoiced the clients for expenses, on firm letterhead.  Moreover, the second-person pronouns show that the word "you" refers sometimes only to Van Dyke individually ("you and/or the companies which you control"), sometimes only to Anglo–Dutch ("I would be entitled to receive from you"), and sometimes to Van Dyke and his companies ("you have executed" the McConn & Williams fee agreement—Van Dyke signing for his companies).  In sum, the pronouns indicate only inexact drafting; none says that despite the firm letterhead and firm signature, the agreement could only have been with Swonke personally.

Nor does the fee calculation, based solely on the hours Swonke spent individually, suggest that others at Greenberg Peden were excluded from the work.  Taking Swonke's time into account provided a way of limiting the fee.  If anything, the rounding-up feature of the calculation might suggest a means of providing additional compensation for others who did work on the case.  Anglo–Dutch was to reimburse expenses, which were billed by Greenberg Peden, not by Swonke individually.

*Anglo-Dutch*, 352 S.W.3d at 452.  Under the plain text, the numerator consists of the hours Swonke spent on the Halliburton matter while he was affiliated with Greenberg Peden.  Moreover, a reasonable client entering into the fee agreement with the law firm Greenberg Peden would not expect to pay Greenberg Peden for hours worked by an attorney formerly affiliated with it after Greenberg Peden dissolves and that attorney moves to a different firm, particularly when the client already has a contingency-fee agreement in place with the second law firm pertaining to the same matter.

With regard to the rounding-up provision, under the plain text, it is the hours

ratio that is to be rounded up to the next whole percentage, not the product of the hours ratio and 20%. Any example provided in the fee agreement, regardless of its correctness, cannot control over the plain language of the substantive rounding-up provision or inject ambiguity where none otherwise exists. *See Tex-Fin, Inc. v. Ducharne*, 492 S.W.3d 430, 442 (Tex. App.—Houston [14th Dist.] 2016, no pet.) ("examples" in letter agreement "illustrated" calculation of sale bonus but did not bear on plain construction of substantive provision). We also do not think that a reasonable client would expect an example to do so. *See Anglo-Dutch*, 352 S.W.3d at 451 ("Only reasonable clarity, not perfection, is required[.]").

Finally, Swonke and Greenberg Peden point to much of the same extrinsic evidence raised in the original trial to support their reading of the fee formula. However, given the Texas Supreme Court's conclusion that the fee agreement was not ambiguous, and our agreement that the plain language of the fee agreement indicates (1) the makeup of the numerator of the hours ratio consists of the time Swonke worked on the case while at Greenberg Peden and (2) it is the hours ratio which is rounded up to the next whole percentage, not the hours ratio after being multiplied by 20%, such evidence continues to be of limited relevance and does not suggest that the parties must have intended something different from what they plainly stated. *See id.* at 452–53.

We overrule Swonke's and Greenberg Peden's first cross-issue.

### 4. Amount of interest

In its second issue, Anglo-Dutch argues that even if the trial court could award interest on the amount owed under the fee agreement, those interest amounts must be reduced.

### a. Anglo-Dutch could challenge interest and costs.

23

In response to this issue, and affirmatively as their fourth cross-issue, Swonke and Greenberg Peden contend that Swonke is entitled to the pre- and postjudgment interest awards and Swonke and Greenberg Peden are entitled to the costs awards contained in the January 2007 judgment because Anglo-Dutch did not appeal, and waived any complaints as to, them. We disagree. The January 2007 judgment had awarded Swonke contract damages of $1,000,000; pre- and postjudgment interest; attorney's fees for the prosecution of his contract and declaratory judgment claims and for the defense of Anglo-Dutch's declaratory judgment claim; and costs. The January 2007 judgment also had awarded Greenberg Peden costs. In its first appeal, Anglo-Dutch, which brought declaratory judgment claims against both Swonke and Greenberg Peden, challenged the trial court's determination of the fee agreement as ambiguous and the original jury's finding that Swonke was a party individually to the agreement. Anglo-Dutch requested reversal of the January 2007 judgment, and requested rendition or remand for a new trial. We affirmed the January 2007 judgment; however, the Texas Supreme Court reversed our decision, specifically finding that the fee agreement plainly was between Anglo-Dutch and Greenberg Peden, and remanded.

As a result, essentially there was no longer a judgment against Anglo-Dutch and favorable to Swonke individually as to his contract and declaratory judgment claims, or awards based on those individual claims—specifically, his contract damages,[16] attorney's fees, interest, or costs.[17] Costs only were awarded to

---

[16] The jury question on Swonke's contract damages was predicated on the jury's answering that the fee agreement was with Swonke individually and that Anglo-Dutch failed to comply.

[17] Contrary to Anglo-Dutch's assertion, the January 2007 judgment was not nullified in its entirety by the Texas Supreme Court's reversal of our prior judgment. Based on the jury's verdict, the trial court ordered that Anglo-Dutch take nothing from Swonke and Greenberg

Greenberg Peden in the January 2007 judgment because it had successfully defended against Anglo-Dutch's declaratory judgment claim as Greenberg Peden did not bring any claims on its own behalf. However, we already have determined that Anglo-Dutch did not waive its declarations related to the fee agreement. Moreover, we have determined that the trial court properly ruled in Anglo-Dutch's favor on its three requested declarations presented on remand. Post-remand, Anglo-Dutch asserted various arguments relating to the preclusion and alternatively the reduction of pre- and postjudgment interest on the $306,000 owed under the fee agreement. Anglo-Dutch also requested that Swonke and Greenberg Peden pay Anglo-Dutch its reasonable and necessary attorney's fees and costs. Therefore, under these circumstances, we do not agree that Anglo-Dutch waived its complaints and that Swonke and Greenberg Peden are entitled to the awards of pre- and postjudgment interest and costs from the January 2007 original judgment.[18]

Peden, which included Anglo-Dutch's claim for breach of fiduciary duty against Swonke, and that Swonke take nothing on his claims for fraud and exemplary damages against Anglo-Dutch and Van Dyke. We affirmed the trial court's judgment, and the Texas Supreme Court reversed our affirmance. Swonke did not appeal the take-nothing judgment on his fraud and exemplary damages claims, so these portions of the January 2007 judgment remained intact. In other words, even though it did, the trial court did not need to re-rule on these claims in its May 2014 final judgment. And although Anglo-Dutch originally appealed the take-nothing judgment on its fiduciary duty claim, Anglo-Dutch did not include this claim in its petition for review nor does Anglo-Dutch argue it in this appeal. Therefore, this portion of the January 2007 judgment also remained intact.

[18] This is not a situation where Anglo-Dutch prevailed in the trial court and needed to challenge the trial court's failure to award it interest or costs. *Cf. Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987) (per curiam). Nor do any of the other cases cited by Swonke and Greenberg Peden control on waiver as they did not involve a situation, as here, where a party on appeal attacked the final judgment against it that awarded damages, interest, and costs as a result of the trial court's and jury's erroneous interpretation of an unambiguous contract.

In addition, we are not persuaded by Swonke's and Greenberg Peden's reliance on *Bramlett v. Phillips*, 359 S.W.3d 304, 311 (Tex. App.—Amarillo 2012), *aff'd*, 407 S.W.3d 229 (Tex. 2013), and *Phillips v. Bramlett*, 407 S.W.3d 229, 237–38 (Tex. 2013), to argue that the January 2007 judgment's awards of interest and costs remain in force and effect. Here, Anglo-Dutch had appealed the trial court's original January 2007 judgment against it on the basis that

25

We overrule Swonke's and Greenberg Peden's fourth cross-issue, and proceed to the merits of Anglo-Dutch's second issue.

### b. Valid tender is a defense to interest.

Both pre- and postjudgment interest compensate judgment creditors for their lost use of the money due to them as damages. *See Miga I*, 96 S.W.3d at 212. Valid tender is an unconditional offer of and actual production of funds by a debtor to pay a sum not less than the amount due on a debt or obligation. *Baucum v. Great Am. Ins. Co.*, 370 S.W.2d 863, 866 (Tex. 1963); *Bray v. Cadle Co.*, 880 S.W.2d 813, 818 (Tex. App.—Houston [14th Dist.] 1994, writ denied). A tender must be unconditional in order to defeat a claim for interest on the obligation accruing after the date of the tender. *Note Inv. Group, Inc. v. Assocs. First Capital Corp.*, 476 S.W.3d 463, 487 (Tex. App.—Beaumont 2015, no pet.); *see Staff Indus., Inc. v. Hallmark Contracting, Inc.*, 846 S.W.2d 542, 548–50 (Tex. App.—Corpus Christi 1993, no writ). The party asserting a valid tender has the burden of proving it. *Bray*, 880 S.W.2d at 818. "The effect of tender of the amount owed is that it stops the accrual of interest on the debt." *Id.* (citing *Arguelles v. Kaplan*, 736 S.W.2d 782, 784 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.)). If the debtor tenders payment for the full amount owed, and the creditor refuses to accept it and proceeds to trial, then the debtor is not liable for subsequent interest. *Note Inv. Group*, 476 S.W.3d at 484.

---

the court improperly failed to interpret the unambiguous fee agreement and instead permitted the jury to interpret it as being between Anglo-Dutch and Swonke individually and award Swonke damages. We rejected Anglo-Dutch's position. Anglo-Dutch did not petition for review of our affirmance of the trial court's take-nothing judgment on its fiduciary duty claim but did not otherwise narrow or focus its appeal of our decision to the Texas Supreme Court. *See Guitar Holding Co., L.P. v. Hudspeth Cty. Underground Water Conservation Dist. No. 1*, 263 S.W.3d 910, 918 (Tex. 2008); *Hudspeth Cty. Underground Water Conservation Dist. No. 1 v. Guitar Holding Co., L.P.*, 355 S.W.3d 428, 434 (Tex. App.—El Paso 2011, pet. denied). The Texas Supreme Court sided with Anglo-Dutch, reversed our judgment, and remanded for further proceedings.

A tender generally must include everything the creditor is entitled to, and a tender of any less sum is not effective. *Id.* at 493. "[T]he general rule [is] that paying part of a debt does not bar the further accrual of interest." *Hand & Wrist Ctr. of Houston, P.A. v. Republic Servs., Inc.*, 401 S.W.3d 712, 721 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140, 156 (Tex. App.—Amarillo 2001, pet. denied)); *J.M. Hollis Constr. Co. v. Paul Durham Co.*, 641 S.W.2d 354, 357 (Tex. App.—Corpus Christi 1982, no writ). However, "[t]he [declining-principal] interest framework used in *Brainard* and *Battaglia* [*v. Alexander*, 177 S.W.3d 893 (Tex. 2005)] applies not only to partial settlements, but also . . . to partial payments of obligations that are unconditionally tendered and accepted." *Hand & Wrist Ctr.*, 401 S.W.3d at 721.

### c. Anglo-Dutch did not establish valid prejudgment tender.

Anglo-Dutch argues that its May 1, 2006 unconditional tender cut off further accumulation of prejudgment and, for that matter, postjudgment interest.

The record reflects that in the original trial the jury did not answer any question regarding Anglo-Dutch's tender defense. But at the January 2007 hearing on various judgment-related motions and evidentiary hearing on attorney's fees the trial court considered Anglo-Dutch's argument that the amount of prejudgment interest should be reduced based on its May 1, 2006 unconditional tender of $323,650.33. The trial court concluded that Swonke was "entitled to interest, prejudgment interest on the verdict" and denied Anglo-Dutch's "motion." The trial court expressly stated that the May 1, 2006 letter "was not an unconditional offer and settlement," "[t]here were a lot of strings attached to it," and "[i]t was not done in good faith." Anglo-Dutch did not challenge the trial court's tender ruling in its first appeal.

On remand, the record does not reflect that Anglo-Dutch requested a jury

question, or obtained a jury finding, on its defense of tender. *See Oyster Creek Fin. Corp. v. Richwood Investments II, Inc.*, 176 S.W.3d 307, 320 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (complaint waived where defendant failed to request jury question on effective tender to preclude prejudgment interest (citing Tex. Rs. Civ. P. 273, 279, and *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 253 (Tex. App.—Houston [14th Dist.] 1999, pet. denied))). However, Anglo-Dutch raised its tender arguments in its motions for entry of judgment and to modify judgment. Although the trial court's May 2014 final judgment did not expressly deny Anglo-Dutch's tender defense, the court computed prejudgment interest on the entire principal sum of $306,000 from April 22, 2004, when the lawsuit was filed, to January 22, 2007, the date of the original judgment, and ordered postjudgment interest on the judgment amount of $348,127.40 from the date of the original judgment until paid.

The parties disagree whether the defense even applies in a situation where the creditor tenders only part of the amount owed, and the debtor does not accept the payment. In any event, assuming without deciding solely for purposes of our analysis that the defense of unconditional partial tender applies in such circumstances, Anglo-Dutch did not meet its burden to prove that its May 1, 2006 tender was unconditional as a matter of law. *See id.* n.5. "Unconditional" means "not limited by a condition; not depending on an uncertain event or contingency; absolute." Black's Law Dictionary 1757 (10th ed. 2014); *see* New Oxford American Dictionary 1881 (3d. ed. 2010) ("not subject to any conditions"). In its May 1, 2006, letter, which accompanied a check made out to Greenberg Peden in the amount of $323,650.53, Anglo-Dutch stated that this figure represented the principal sum of $293,338.85 it considered to be due under the fee agreement, along with 5% interest from the closing of the Halliburton settlement through April

28

30, 2006. Nowhere in this letter does the word "unconditional" appear.

Further, Anglo-Dutch expressly noted that the principal sum "does not take into account our claim for attorney's fees and the fee forfeiture remedy, which as you know, Anglo-Dutch intends to continue pursuing in this matter." Anglo-Dutch also stated it strongly disagreed with Swonke's position that additional amounts were owed beyond the tendered amount and was "prepared to let the judge and jury decide [that issue], as well as what amounts are owed to Anglo-Dutch by way of its claims in this matter." Clearly, such tender was not absolute. In other words, despite any tender of what it believed were the principal sum and interest owed, Anglo-Dutch was pursuing counterclaims and a remedy of fee forfeiture to recover the tendered funds. *Compare Weisfeld v. Tex. Land Fin. Co. II*, 162 S.W.3d 379, 383 (Tex. App.—Dallas 2005, no pet.) (debtor did not make unconditional tender where it deposited funds into registry of court, but at same time filed counterclaim against creditor for usurious interest and sought to recover portion of deposited funds), *and Commercial Union Ins. Co. v. La Villa Indep. Sch. Dist.*, 779 S.W.2d 102, 107 (Tex. App.—Corpus Christi 1989, no writ) (debtor did not make unconditional tender where it reserved its right to seek an offset based on liquidated damages provision of contract being unenforceable as penalty and essentially claim that it was entitled to recover back portion of total amount due to creditor), *with Note Inv.*, 476 S.W.3d at 489–90 (debtor's reservation of justification defense against creditor's claims seeking additional damages "over and above" amount of tender was not condition on tender).

Anglo-Dutch's second letter dated May 22, 2006, does not convince us otherwise. Anglo-Dutch did not actually include a check, so this letter did not constitute a re-tender. And although Anglo-Dutch stated in the May 22 letter that its earlier delivery of the check was without prejudice to Swonke's claims to

29

recover alleged additional amounts under the fee agreement, Anglo-Dutch did not state that such prior tender was unconditional or that it would no longer seek fee forfeiture. We conclude that Anglo-Dutch failed to satisfy its burden to prove as a matter of law that the May 1, 2006 letter and check constituted an unconditional tender of the fees it owed under the fee agreement to creditor Greenberg Peden (or Swonke).

### d. Anglo-Dutch did not establish valid postjudgment tender.

Next, we consider whether Anglo-Dutch's deposit of a total of over $1.8 million into the court registry in lieu of supersedeas bond cut off further accumulation of interest on the judgment. Postjudgment interest runs from the date of judgment through the date the judgment is satisfied. *See Miga I*, 96 S.W.3d at 212; *see also* Tex. Fin. Code Ann. § 304.005 (West 2006). A judgment debtor's timely unconditional tender of payment of the judgment amount interrupts the running of postjudgment interest. *See Trevino v. City of Houston*, 695 S.W.2d 289, 291 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). "When a judgment creditor has received an unconditional tender of the money awarded, and may invest it as he chooses, there is no need for the continuing accrual of post-judgment interest." *Miga I*, 96 S.W.3d at 212.

Anglo-Dutch does not argue that it actually made any unconditional tender of the judgment amount directly to Greenberg Peden or Swonke. Anglo-Dutch instead asserts that its postjudgment cash deposits into the court registry in July 2008 and September 2008 (totaling over $1.8 million) functioned as an unconditional tender sufficient to prevent further accrual of postjudgment interest. We disagree. None of the cases Anglo-Dutch relies on compels us to toll postjudgment interest here. Anglo-Dutch primarily cites *St. Paul Mercury Insurance Co. v. Billiot*, 342 S.W.2d 161, 164 (Tex. App.—Beaumont 1960, writ

30

ref'd), for the proposition that a tender into the registry of the trial court of all sums due under the judgment halts the further accumulation of judgment interest.[19] However, the exact circumstances of the tender and payment into the court registry in *Billiot* are unclear, including whether the tender in fact occurred prior to judgment. At least one court has interpreted *Billiot* as requiring the judgment amount to be tendered with the trial court prior to the entry of judgment to cut off postjudgment interest. *See Sembera v. Petrofac Tyler, Inc.*, 253 S.W.3d 815, 833 (Tex. App.—Tyler 2008, pet. denied) (no postjudgment interest where funds unconditionally tendered into court registry prior to trial).

Moreover, the Texas Supreme Court recognizes that: "A judgment debtor is entitled to supersede the judgment while pursuing an appeal; this defers payment until the matter is resolved but does not halt the accumulation of interest on the judgment." *Miga v. Jensen* (*Miga II*), 299 S.W.3d 98, 100 (Tex. 2009); *see* Tex. R. App. P. 24.1(a) (judgment debtor may supersede judgment by filing a written agreement regarding same, filing a good and sufficient bond, making a deposit in lieu of a bond, or providing alternate court-ordered security). Anglo-Dutch's efforts to supersede execution of the judgment pending appeal pursuant to Texas Rule of Appellate Procedure 24.1, without more, do not operate as an unconditional tender sufficient to cut off postjudgment interest. Nor do the notices of cash deposit and additional cash deposit in lieu of supersedeas bond, and the related agreed order indicate that the parties intended such action to be an unconditional tender to terminate the accrual of postjudgment interest. *Cf. Miga II*, 299 S.W.3d at 100 (after creditor filed bond, parties entered agreed order that

---

[19] Our sister court in *Breault v. Psarovarkas*, No. 01-01-00122-CV, 2003 WL 876651, at *7–8 (Tex. App.—Houston [1st Dist.] Feb. 28, 2003, pet. denied) (mem. op.), cited *Billiot* but did not consider applying it because in that case the judgment debtor did not tender any funds into the court registry but rather made a timely unconditional tender offer of payment of the judgment to the creditor sufficient to prevent accrual of further postjudgment interest.

31

creditor would tender debtor payment to satisfy judgment to stop postjudgment interest on that sum).

> ### e. Anglo-Dutch otherwise failed to preserve error as to postjudgment interest.

Finally, Anglo-Dutch seeks to invoke *Long v. Castle Texas Production Limited Partnership*, 426 S.W.3d 73 (Tex. 2014), to set the starting date for postjudgment interest as May 13, 2014, the date of the final judgment on remand, instead of January 22, 207, the date of the original final judgment. Pursuant to *Long*, postjudgment interest accrues from the subsequent judgment instead of the original judgment "when an appeal results in a retrial or a remand for further proceedings where new evidence is required." 426 S.W.3d at 80. However, unlike its postjudgment tender argument, the record does not reflect that Anglo-Dutch ever presented this argument regarding the proper start date for postjudgment interest to, much less obtained an express or implicit ruling from, the trial court. *See* Tex. R. App. P. 33.1. We conclude that Anglo-Dutch failed to preserve this subissue.

We overrule Anglo-Dutch's second issue.

## B. Anglo-Dutch's attorney's fees

In the original January 2007 judgment, the trial court awarded Swonke his reasonable and necessary, equitable and just attorney's fees for prosecution of his contract and declaratory judgment claims and for defense of Anglo-Dutch's declaratory judgment claim. With regard to Anglo-Dutch, the trial court ordered that it take nothing from Swonke and Greenberg Peden, which included its claim for attorney's fees. The trial court also expressly noted that it determined an award of attorney's fees to Anglo-Dutch would not be equitable or just.

On remand, Anglo-Dutch sought to enforce a stipulation from the original

trial whereby the parties agreed to the reasonableness and necessity of a total of $415,000 in Anglo-Dutch's attorney's fees at the original trial ($290,000), the court of appeals ($75,000), and the Texas Supreme Court ($50,000). The trial court denied Swonke's and Greenberg's Peden rule 166 motion as to Anglo-Dutch's waiver, abandonment, and forfeiture of its attorney's fees claim. In doing so, the trial court ruled that: subject to being proven up, Anglo-Dutch's original trial fees have been agreed to as reasonable and necessary but the court would not exceed the stipulated $290,000 of reasonable and necessary attorney's fees "in the award, if any, of any 'original trial fees'"; Anglo-Dutch's stipulated reasonable and necessary attorney's fees were $75,000 at the court of appeals and $50,000 at the Texas Supreme Court; and the court would entertain proof of additional reasonable and necessary attorney's fees post remand when making "any award of said fees."

After a trial on attorney's fees, the jury awarded $0 for Anglo-Dutch's reasonable and necessary attorney's fees at the original trial, $0 for its fees at the court of appeals, and $50,000 for its fees at the Texas Supreme Court; $0 for its fees post remand, including any future appeal; and $0 for its costs at the original trial, $12,000 for its costs for the prior appeal to the court of appeals and the Texas Supreme Court, and $0 for its trial costs post-remand. Anglo-Dutch moved for judgment notwithstanding the verdict based on the stipulation and its allegedly conclusive trial evidence. In its May 2014 final judgment, the trial court disregarded the jury's answers awarding Anglo-Dutch any attorney's fees and costs, finding "that an award of attorneys' fee or costs to Anglo-Dutch would not be equitable or just."

In its third and final issue, Anglo-Dutch argues that the trial court abused its discretion by not awarding it at least $415,000 in reasonable and necessary attorney's fees based on the stipulation and on the conclusive evidence of its fees,

or at the very least the amounts in reasonable and necessary attorney's fees and costs found by the jury. Anglo-Dutch further contends that "the only equitable and just outcome is to award" its stipulated attorney's fees. Swonke and Greenberg Peden respond that Anglo-Dutch waived its attorney's fees and costs claims by not appealing the original January 2007 judgment on those claims, and waived and was estopped from enforcing the stipulation.

In "any proceeding" under the Uniform Declaratory Judgments Act (UDJA), "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.* Moreover, "courts have the authority to award less than an amount determined by a jury to be reasonable and necessary and . . . this is a matter committed to the trial court's sound discretion." *Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162 (Tex. 2004). That is, the determination of whether an award of attorney's fees would be equitable and just is not susceptible to direct proof but instead is a matter of fairness in light of all the circumstances. *See id.* at 162–63 (trial court has discretion to reduce jury award of attorney's fees).

Further, the award of attorney's fees is not dependent on a finding that the party "substantially prevailed." *Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). The trial court is not required to award attorney's fees to the prevailing party in a declaratory judgment

34

and may award attorney's fees to the nonprevailing party. *Moosavideen v. Garrett*, 300 S.W.3d 791, 802 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "Thus, the attorney's fees provision grants the trial court broad discretion to (i) afford all parties the opportunity to request fees; (ii) decline to award fees; and (iii) allow an award only when reasonable, necessary, equitable, and just." *Feldman v. KPMG LLP*, 438 S.W.3d 678, 685 (Tex. App.—Houston [1st Dist.] 2014, no pet.). To find an abuse of discretion, the trial court must have ruled arbitrarily, unreasonably, or without reference to any guiding principles or ruled without any supporting evidence. *See Bocquet*, 972 S.W.2d at 21.

Even assuming without deciding solely for purposes of our analysis that this claim was not waived,[20] and that Anglo-Dutch could continue to invoke the stipulation,[21] we conclude that the trial court did not abuse its broad discretion by refusing to award Anglo-Dutch its reasonable and necessary attorney's fees and costs pursuant to the UDJA. Here, the circumstances reveal a client that enjoyed a favorable multi-million dollar settlement in the underlying Halliburton litigation, due at least in part to the legal representation of Greenberg Peden and, particularly, its counsel Swonke. We certainly recognize that litigants have the right to pursue and vindicate their claims, including those pursuant to the UDJA; however, Anglo-Dutch refused to pay, and ostensibly still has not paid, its attorney for any portion

[20] During the second trial, Anglo-Dutch's counsel acknowledged that "there [wa]s no separate point of error on appeal regarding [Anglo-Dutch's] attorney's fees." We have determined that Anglo-Dutch sufficiently preserved its declarations because on appeal it assailed the judgment against it based on the trial court's improper actions in connection with (not) construing the fee agreement. However, because even nonprevailing parties may be awarded attorney's fees and costs under the UDJA upon request, Anglo-Dutch should have appealed the original denial of its fees claim, including the finding that an award of attorney's fees would not be equitable and just.

[21] The record indicates that pursuant to this stipulation the parties agreed in the event of a remand Anglo-Dutch would not have to show the reasonableness and necessity of $290,000 for attorney's fees at the original trial, $75,000 for fees at the court of appeals, and $50,000 for fees at the Texas Supreme Court.

of such representation but instead has litigated twice in the trial court, twice at our court, and once at the Texas Supreme Court for just under twelve years at the time this appeal was submitted. In light of all these circumstances, we cannot conclude the trial court abused its discretion by determining that an award of attorney's fees or costs to Anglo-Dutch would not be equitable or just.

We overrule Anglo-Dutch's third issue.

## C. Swonke's and Greenberg Peden's remaining cross-issues

In their second and third cross-issues, Swonke and Greenberg Peden argue that the trial court erred by granting summary judgment to Anglo-Dutch on Swonke's contract and attorney's fees claims and by refusing to render judgment in Swonke's favor on these claims.

Swonke and Greenberg Peden continue to argue that Anglo-Dutch's alleged waivers mean the trial court only could grant judgment in Swonke's favor. However, as previously discussed, in its first appeal, Anglo-Dutch challenged the January 2007 judgment against it based on the trial court's improper determination that the fee agreement was ambiguous and refusal to declare that the agreement was with Greenberg Peden instead of Swonke individually. As we have already determined, Anglo-Dutch did not waive its declarations or its challenges to the various awards in favor of Swonke, including damages and interest, attorney's fees based on prosecuting his claims and defending Anglo-Dutch's claim, and his costs, as well as to the award of costs to Greenberg Peden.

### 1. Swonke's breach-of-contract claim

With regard to Swonke's contract claim, Swonke and Greenberg Peden insist that the trial court erred in granting summary judgment to Anglo-Dutch because the Texas Supreme Court's holding that Swonke was not a party to the fee

36

agreement was not dispositive of his individual breach-of-contract claim. We disagree. While we do not agree with Anglo-Dutch that the Texas Supreme Court entirely "wiped out" the trial court's original January 2007 judgment, the Court's ruling as to the construction of the fee agreement clearly meant there was no longer a judgment in favor of Swonke on his individual contract claim. The outcome of the Texas Supreme Court's decision was that Swonke did not have a contract claim against Anglo-Dutch as an individual party to the fee agreement.

At the time of summary judgment, Swonke's live, controlling petition was his second amended counterclaim. *See* Tex. R. Civ. P. 65; *J.M. Huber Corp. v. Santa Fe Energy Res., Inc.*, 871 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Anglo-Dutch argued in its motion for interlocutory summary judgment that the Texas Supreme Court's ruling that Swonke did not have a contract with Anglo-Dutch meant Swonke did not prevail on his pleaded contract claim. Swonke's second amended counterclaim alleged that "Mr. Swonke's agreement with Anglo-Dutch was his own personal contract that was independent of Greenberg Peden" and that Anglo-Dutch breached its fee agreement *with Swonke*. But, as determined by the Texas Supreme Court, Anglo-Dutch had no fee agreement individually with Swonke as a matter of law. There was no alternative pleading of breach by assignment of a contract. Swonke did not allege that his breach-of-contract claim was otherwise based on an assignment of Greenberg Peden's rights or causes of action in connection with the fee agreement between Anglo-Dutch and Greenberg Peden. Rather, the counterclaim identified the fee agreement solely as a personal contract between Anglo-Dutch and Swonke and did not allege any facts whatsoever about the assignment. Further, the record does not reflect that Swonke ever sought to amend his counterclaim.[22]

---

[22] As we have already determined, the parties tried by consent issues relating to Anglo-

We conclude that the trial court could properly grant summary judgment in favor of Anglo-Dutch and against Swonke. Anglo-Dutch had shown as a matter of law there was not a valid contract between Anglo-Dutch and Swonke individually such that Swonke could not prevail on his pleaded contract claim, and Swonke and Greenberg Peden failed to raise a fact issue otherwise. *See Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014) (per curiam) (trial court properly grants traditional summary judgment when defendant conclusively negates at least one essential element of plaintiff's cause of action).

Because the trial court properly rendered summary judgment against Swonke on his pleaded contract claim, we accordingly reject Swonke's position that the trial court instead was compelled to render judgment in his favor on his individual contract claim in the amount of $1,000,000 as found by the original jury.

## 2. Swonke's claims for attorney's fees

With regard to Swonke's claims for attorney's fees, all the parties moved for summary judgment. The trial court granted summary judgment in favor of Anglo-Dutch as to Swonke's claims for attorney's fees under both chapter 38 and the UDJA. We again reject Swonke's and Greenberg Peden's argument that Anglo-Dutch's failure to attack the trial court's original judgment with regard to Swonke's attorney's fees award with a specific point of error means that Anglo-Dutch waived and Swonke is entitled to the fees awarded to him under the January

---

Dutch's obligation to pay Swonke by assignment the amount owed to Greenberg Peden under the fee agreement with Greenberg Peden. However, in analyzing the trial court's decision on summary judgment, we consider Swonke's live petition at that time. Therefore, that Swonke ultimately prevailed on his contract by assignment claim as tried by consent does not conflict with Swonke's inability to prevail at summary judgment on his individual contract claim contained in his second amended counterclaim.

2007 judgment.[23]

### a. Section 38.001

Anglo-Dutch argued that it was entitled to interlocutory summary judgment on Swonke's chapter 38 attorney's fees claim because the Texas Supreme Court ruled that the fee agreement was between Anglo-Dutch and Greenberg Peden, not Swonke. We already have determined that Anglo-Dutch was entitled to summary judgment on Swonke's individual contract claim as contained in his second amended counterclaim; therefore, Swonke was unable to recover attorney's fees based on such contract claim. *See* Tex. Civ. Prac. & Rem. Code § 38.001(8); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (to recover attorney's fees under chapter 38, party must prevail on cause of action for which attorney's fees are recoverable).[24]

### b. Section 37.009

Anglo-Dutch argued three grounds for summary judgment as to Swonke's claim for attorney's fees under the UDJA: (1) Swonke was not entitled to attorney's fees because his declaratory judgment counterclaim was a mirror image of Anglo-Dutch's claim; (2) because Swonke otherwise failed on his breach-of-contract claim, he was barred from any attorney's fees pursuant to section 37.009; and (3) awarding attorney's fees to Swonke would not be equitable and just. Because the trial court did not specify the grounds upon which it granted summary judgment against Swonke on his section 37.009 claim for attorney's fees, we must

---

[23] We find *City of Temple v. Taylor*, 268 S.W.3d 852, 858 (Tex. App.—Austin 2008, pet. denied), distinguishable because here the original award of attorney's fees to Swonke was not based solely on prosecution and defense of the declaratory judgment claims, but also was expressly tied to prosecution of his contract claim.

[24] Swonke and Greenberg Peden do not argue, nor is there any clear indication or evidence in the record, that the parties tried by consent any claim by Swonke for attorney's fees in connection with his contract by assignment claim.

affirm if any of the grounds has merit. *See McMahan v. Greenwood*, 108 S.W.3d 467, 477 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (citing *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989)).

We conclude that the trial court properly could grant summary judgment based on Anglo-Dutch's third asserted ground. Equity and justice in the context of section 37.009 are questions of law committed to a trial court's broad discretion in light of all the circumstances. *See Ridge Oil Co.*, 148 S.W.3d at 161; *Bocquet*, 972 S.W.2d at 21. Here, the circumstances reveal not only unjust and inequitable conduct by Anglo-Dutch, but also unjust and inequitable conduct by Swonke. Despite the Texas Supreme Court's clear ruling as a matter of law that the unambiguous fee agreement was with Greenberg Peden, not Swonke individually, by the time of summary judgment, Swonke had repeatedly advanced his interpretation of the fee agreement and formula based on such rejected, foreclosed position.

As on appeal, in the trial court, Swonke and Greenberg Peden solely argued Swonke's entitlement to the amount of attorney's fees awarded by the trial court for trial and the first appeal in the original January 2007 judgment, for a total of $427,892.50. Having affirmed the trial court's grant of summary judgment in favor of Anglo-Dutch on Swonke's attorney's fees claims, we conclude that the trial court did not err by refusing to render judgment in Swonke's favor for this amount.

We overrule Swonke's and Greenberg Peden's second and third cross-issues.

## III. CONCLUSION

Accordingly, having overruled all of Anglo-Dutch's issues and all of

Swonke's and Greenberg Peden's cross-issues, we affirm the trial court's judgment.


/s/    Marc W. Brown
       Justice


Panel consists of Justices Christopher, Jamison, and Brown.