**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00340-CV**
_____

**CARL MERZI AND THOMAS SAMMONS III, Appellants**

**V.**

**JOHN "HAL" BRUMFIELD, Appellee**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 19-02-03036-CV

**MEMORANDUM OPINION**

Carl Merzi and Thomas Sammons III (Plaintiffs or Appellants) appeal the trial court's final judgment entering a take-nothing judgment in favor of John "Hal" Brumfield (Brumfield or Appellee) and dismissing Appellants' claims. Brumfield filed a cross-appeal of the trial court's denial of Brumfield's request for attorney's fees under the Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009. We affirm.

## Background

The Plaintiffs filed an Original Petition and Application for Temporary Restraining Order against Brumfield alleging they were part owners of a company operating under the name "Tachus," which was formed to provide residential fiber optic broadband services.[1] Plaintiffs alleged that Plaintiffs and Brumfield began work on behalf of the company under an agreement that provided each of them would own equal interests, along with a fourth owner, Philip Ming who owned 5% of the company. According to the petition, after Merzi and Sammons had contributed to the company and its projects (including a Fiber-to-the-Home project with the City of Shenandoah referred to herein as "the Shenandoah FttH project" or "the Shenandoah project"), Brumfield was supposed to incorporate the company as agreed and allocate the ownership as agreed, but Brumfield instead used his own attorney to set up Tachus LLC, and the LLC's public filings list only himself and his wife as members of Tachus LLC. Plaintiffs alleged that once the failure to form the LLC as agreed was discovered, Brumfield agreed that the equity in Tachus would be adjusted, but Brumfield never took any action to do so and instead he allowed the owners to continue to build the company. The petition alleged that in 2018, after the company successfully reached agreements with the City of Shenandoah, they all

---

[1] Plaintiffs also sued Ana Brumfield, John Brumfield's wife. Because Plaintiffs non-suited Ana and she is not a party to the appeal, we only refer to her as necessary in this opinion.

2

agreed it would be beneficial to form a new company to further define the company's business as it existed in and around the City of Shenandoah. According to the petition, Brumfield converted Tachus LLC into Tachus Shenandoah but once again failed to list Plaintiffs as owners/members of Tachus Shenandoah LLC. Plaintiffs alleged that thereafter the Plaintiffs and Brumfield entered into a Letter Agreement dated September 30, 2018, wherein they agreed to (1) sign and deliver a "Use and Management Agreement"[2] and (2) sign and deliver an Amended Company Agreement which would document their equal membership interest and provide for the reimbursement of advances prior to making distributions. According to the petition, Plaintiffs began to suspect Brumfield was being dishonest and Plaintiffs learned that Brumfield opened a bank account for the company but failed to make the Plaintiffs signatories on the account, despite the fact that revenues from company customers and sources were being deposited into the account. The petition also alleged that Brumfield improperly used company funds for his own personal use and improperly obtained credit cards for the company that he used for his own benefit. Plaintiffs alleged that when they inquired into Brumfield's questionable activities, he broke off communications while they were negotiating a more formal company agreement. According to the petition, Brumfield planned a coup of the company,

---

[2] The parties sometimes refer to this agreement as the "Use Management Agreement" or "Use-Management Agreement." Because the document is titled "Use and Management Agreement," we will refer to it by the title.

used the failure to incorporate the company as agreed upon as leverage to take the position that he and his wife were the only owners, threatened to take the company into bankruptcy which would harm the company, and took actions or inactions that damaged the reputation the company had with the City of Shenandoah.

Plaintiffs sued Brumfield for a declaratory judgment that the Letter Agreement dated September 30, 2018 is the Company Agreement; that Ming is the owner of 5% of Tachus Shenandoah LLC and has been since its formation in 2015; that Merzi, Sammons, and Brumfield each own 31 1/3% of the company and have since its formation in 2015; and that Merzi, Sammons, and Brumfield are managers of the company and have been since its formation in 2015. Plaintiffs pled in the alternative a claim for declaratory judgment that the company was a partnership; that Ming is a 5% partner in the Company; that Plaintiffs and Brumfield each own 31 1/3% of the partnership and have since its inception in 2015; that all business by Tachus Shenandoah LLC since its inception in 2015 was for the benefit of the partnership; and that all assets of Tachus Shenandoah LLC since 2015 are actually assets of the company. Plaintiffs also sued Brumfield for breach of fiduciary duty, constructive fraud, conversion, fraud, negligent misrepresentation, promissory estoppel, attorney's fees, and equitable relief. Plaintiffs filed an application for temporary restraining order to prevent Brumfield from denying the Plaintiffs' ownership rights and from withholding the company's information and records from

4

Plaintiffs, and Plaintiffs also sought a temporary and a permanent injunction against Brumfield.

As an exhibit to their petition, Plaintiffs attached a September 30, 2018 "Letter Agreement" executed by Plaintiffs and Brumfield that stated the following in its entirety:

> This Letter Agreement is executed by and among JOHN H. BRUMFIELD, an individual residing in Texas ("JHB"), THOMAS W. SAMMONS III, an individual residing in Texas ("TS"), and CARL MERZI, an individual residing in Texas ("CM"). JHB, TS and CM are sometimes referred collectively as the "Parties".
>
> The Parties hereby agree as follows:
>
> 1. Upon the execution hereof, the Parties will execute and deliver to each other the Use [and] Management Agreement to be effective as of the date hereof.
>
> 2. On or before 5:00 p.m. CST on October 12, 2018, the Parties will execute and deliver to each other an Amended and Restated Company Agreement and Joint Consent of Manager and Members of Tachus Shenandoah, LLC, with the following intent:
>
>     a. Regardless of any past time, material, service, or cost claims, that each Party will own equal Membership interests or units in Tachus Shenandoah, and;
>     b. The Parties agree to reimburse any documented cash advances made directly to Tachus Shenandoah, specifically for the Shenandoah FttH project, prior to any other distributions.
>
> Executed as of the date written above.

Plaintiffs also attached as an exhibit a "Use and Management Agreement" executed in 2018 by Plaintiffs (as "Service Providers") and Brumfield (as President of Tachus

5

Shenandoah, LLC and as CEO of Tachus Holdings, Inc.) wherein they agreed that the Service Providers owned a fiber optic network with supporting equipment, that Brumfield owned the internet domain name and websites for Tachus, that Brumfield granted Tachus Shenandoah, LLC the non-exclusive right to use Brumfield's Tachus internet domain name and branding for a fee per residential customer, and that Tachus Shenandoah, LLC would pay monthly fees to Tachus Holdings, Inc. and the Service Providers per internet service customer. Although the Use and Management Agreement provided a fee-based service agreement, it did not discuss or address the ownership interests in Tachus Shenandoah.

Brumfield filed an Original Answer and, subsequently, Defendant's First Amended Answer and Counterclaim. In Defendant's First Amended Answer and Counterclaim, Brumfield generally denied Plaintiffs' allegations, asserted affirmative defenses, and pleaded that "[i]n the event that the court finds that the parties are members of a limited liability company or partners of a general partnership," he asserted a counterclaim for "non-monetary relief in the form of a Court order for termination and winding up of such limited liability company or partnership pursuant to Section 11.413 of the Texas Business Organizations Code."

Brumfield filed a Motion for Traditional and No-Evidence Motion for Summary Judgment, arguing that after Plaintiffs rejected Brumfield's offer to be members with him in an LLC, Brumfield formed Tachus Shenandoah in March 2015

as the sole member and manager. According to the summary judgment motion, from 2015 to 2018 Brumfield continued to make offers to Plaintiffs to become members of Tachus Shenandoah, but they never reached a meeting of the minds as to terms. Brumfield alleged in his summary judgment motion that in September 2018, the Plaintiffs rejected Brumfield's final offer for them to become members of Tachus Shenandoah and instead entered into a "Use and Management Agreement" governing Plaintiffs' provision of bandwidth to Tachus Shenandoah in exchange for Tachus Shenandoah's payment for that service. Brumfield attached exhibits to his motion for summary judgment and argued that the evidence conclusively established that Plaintiffs are not members of Tachus Shenandoah, Plaintiffs were not partners in a partnership with Brumfield, and there was no evidence of the requisite elements for each of Plaintiffs' other causes of action.

Plaintiffs filed a Response to the motion for summary judgment. On April 20, 2020, the trial court signed an Amended Order on Defendant's Motion for Summary Judgment, granting Brumfield's motion on Plaintiffs' cause of action for conversion and claim for declaratory relief as to the declarations related to the partnership issue, but denying his motion as to the declaratory judgment action claim regarding the membership interest in the limited liability company and the remainder of Plaintiffs' causes of action.

Plaintiffs filed their First Amended Petition, removing the causes of action on which the trial court granted a take-nothing summary judgment against Plaintiffs and adding a cause of action for breach of contract. Plaintiffs sought a declaration that (a) the September 30, 2018 Letter Agreement "is the Company Agreement of Tachus Shenandoah LLC f/k/a Tachus LLC, with all other provisions of the agreement supplied by the Texas Organizations Code;" (b) Ming is the owner of 5% of Tachus Shenandoah LLC f/k/a Tachus LLC and has been since its formation in 2015; (c) the remaining interest in Tachus Shenandoah LLC f/k/a Tachus LLC is owned by Merzi, Sammons, and Brumfield at 31 1/3% each, and has been since its formation in 2015, or alternatively since its formation in 2015, or alternatively since the execution of the Letter Agreement; and (d) Merzi, Sammons, and Brumfield are managers of Tachus Shenandoah LLC f/k/a Tachus LLC and have been since its formation in 2015, or alternatively since the execution of the Letter Agreement. According to Plaintiffs, the September 30, 2018 Letter Agreement is a validly executed contract between the parties, Brumfield entered into a valid contract with Plaintiffs to create "Tachus" and to divide ownership equally, Brumfield breached the Letter Agreement by failing to execute and deliver the Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC on or before October 12, 2018, Brumfield breached the contract because he failed or refused to legally transfer to Plaintiffs the ownership interests as set forth

8

in the contract, and these breaches proximately caused Plaintiffs' damages. Brumfield filed a Second Amended Answer and Counterclaim, generally denying Plaintiffs' allegations, asserting affirmative defenses, and pleading a counterclaim "in the event that the Court finds that the parties are members of a limited liability company or partners of a general partnership[.]"

Brumfield filed Defendant's Second Traditional and No-Evidence and Motion for Summary Judgment, attaching certain exhibits and arguing that the Plaintiffs were not members of the LLC. According to Brumfield, although Plaintiffs' requested in their First Amended Petition a declaration from the trial court that the September 30, 2018 Letter Agreement "is the Company Agreement of Tachus Shenandoah LLC f/k/a/ Tachus LLC, with all other provisions of the agreement supplied by the Texas Business Organizations Code[,]" the plain language of the Letter Agreement does not contain any language of assignment of an existing membership interest. Further, Brumfield argues that it does not contain language to suggest the *actual* issuance of new membership interests by the company itself, and, in fact, expressly states that "the parties must execute an Amended and Restated Company Agreement and Joint Consent of Manager and Members of Tachus Shenandoah with the intent of doing certain things." According to Brumfield, on the same day the Plaintiffs and Brumfield executed the Letter Agreement and the Use and Management Agreement but before they were signed, Brumfield had a telephone

9

conversation with Merzi and the Use and Management Agreement was created because the Shenandoah project had become active and Plaintiffs had not signed the Amended and Restated Company Agreement. According to Brumfield, the Use and Management Agreement defined the parties' relationship as a "vendor-vendee" and outlined what each party owned and would receive when residents signed up for internet service. Brumfield alleged that during the telephone call, Brumfield confirmed Merzi was aware that simply signing the Use and Management Agreement (which Brumfield asserts he erroneously called the "MSA" during the call) and Letter Agreement did not make Plaintiffs members of the LLC – the parties still had to reach an agreement and sign the Amended and Restated Company Agreement by the deadline. In the Second Motion for Summary Judgment, Brumfield referenced an exhibit attached to Merzi's deposition, and that exhibit is a transcript of a telephone conversation between Merzi and Brumfield which contains the following:

| | |
|---|---|
| Hal [Brumfield]: | . . . I wanted to make sure you and Tommy [Sammons] understand that just because we sign this MSA, it doesn't make you owners. . . . you've got to sign the company agreement. |
| Carl [Merzi]: | Yeah. |
| Hal [Brumfield]: | We've been talking about it for a long time and, you know, by not signing it, you're telling me that you don't want to be a part of it and that's why I put the hard date in the letter agreement, because if, you know, we can't get it done by then, I'm just going to assume that y'all are good with just the MSA and |

10

|   |   |
|---|---|
| | y'all get paid for providing internet service but that's it. Are you and Tommy [Sammons] okay with that? |
| Carl [Merzi]: | Yeah. Yeah, that's perfect. And -- and I do appreciate your offer of doing it this way, okay? I mean, I do appreciate that. And so both -- you know, Tommy [Sammons] does, too. |

According to Brumfield, shortly after that phone conversation, Plaintiffs and Brumfield signed the Use and Management Agreement as well as the Letter Agreement. Brumfield alleged in the motion that the Amended and Restated Company Agreement was never signed, and the parties have continued to operate under the terms of the Use and Management Agreement.

Brumfield alleged that he did not use the recording of the telephone call as evidence in his initial motion for summary judgment because he "only recently located the flash drive it was saved on." Brumfield argued in his Second Motion for Summary Judgment that, to the extent Plaintiffs would argue the call was inadmissible under the parol evidence rule, that rule did not apply because there was "no agreement."

After Plaintiffs filed responsive pleadings and Brumfield replied, on March 15, 2021, the trial court signed an Order granting Defendant's Second Traditional and No-Evidence Motion for Summary Judgment. As to Plaintiffs' request for a declaration that they have a membership or ownership interest in the company and that the Letter is the company agreement, the trial court made the following findings:

11

The Court agrees that the audio recording is admissible extrinsic evidence of the existence of a condition precedent to the formation of a contract to convey an ownership or membership interest in the Company to the Plaintiffs. The recording conclusively establishes that the parties understood, intended, and agreed that the execution of the Amended and Restated Company Agreement and Joint Consent of Manager and Members of Tachus Shenandoah, LLC "[o]n or before 5:00 CST on October 12, 2018" would be a condition precedent to the formation of a contract to convey an ownership or membership interest in the Company to the Plaintiffs. Since the condition precedent never occurred, no binding contract arose from the Letter Agreement entitling the Plaintiffs to an ownership or membership interest in the Company.

The trial court also granted the motion as to Plaintiffs' contract claim because "[n]o contract was formed that gave the Plaintiffs a membership or ownership interest in the Company."

Brumfield then filed Defendant's Third No-Evidence and Traditional Motion for Summary Judgment, arguing that Plaintiffs had no evidence of one or more essential elements of their fraud and negligent misrepresentation claims, and that the recorded telephone conversation between Brumfield and Merzi conclusively negated one or more essential elements of Plaintiffs' causes of action for fraud and negligent misrepresentation. The trial court initially denied Defendant's Third Motion for Summary Judgment, but on June 24, 2021, the trial court signed an Order granting Defendant's Motion to Reconsider and ordered Plaintiffs take nothing on their causes of action for fraud and negligent misrepresentation.

On July 30, 2021, the trial court signed a Final Judgment incorporating the prior orders of April 20, 2020, March 15, 2021, and June 24, 2021. "Based upon the

12

dismissal of the entirety of Plaintiffs' claims," the trial court rendered a take-nothing judgment in favor of Brumfield and denied any relief not specifically granted in the judgment. Brumfield filed Defendant's Amended Motion for Attorney's Fees and Costs under Section 37.009 of the Texas Civil Practice and Remedies Code. Plaintiffs filed a Motion for New Trial, which was overruled by operation of law, and then filed this appeal. Brumfield filed a notice of cross-appeal of the trial court's denial of Brumfield's request for attorney's fees.

Parol Evidence

In one issue, Appellants argue that the trial court erred in considering parol evidence to contradict the terms of a written agreement regarding the parties' ownership percentages. According to Appellants, the trial court relied exclusively on a recorded conversation that contradicts the terms of the Letter Agreement in granting Defendant's Second Motion for Summary Judgment, in granting Defendant's Motion for Reconsideration of Defendant's Third Motion for Summary Judgment, and in ordering that Plaintiffs take nothing on their remaining causes of action for negligent misrepresentation and fraud.

The applicability of the parol evidence rule is a question of law that we review de novo. *Audubon Indem. Co. v. Custom Site-Prep, Inc.*, 358 S.W.3d 309, 316 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). The parol evidence rule is not a rule of evidence, but a rule of substantive contract law. *Hubacek v. Ennis State Bank*, 317

13

S.W.2d 30, 32 (Tex. 1958). "When parties have entered into a valid, written, integrated contract, the parol evidence rule precludes enforcement of any prior or contemporaneous agreement that addresses the same subject matter and is inconsistent with the written contract." *West v. Quintanilla*, 573 S.W.3d 237, 243 (Tex. 2019). In such cases, extrinsic evidence is not admissible to add to, vary, or contradict the terms of a written contract that is complete on its face. *Guisinger v. Hughes*, 363 S.W.2d 861, 865 (Tex. App.—Dallas 1962, writ ref'd n.r.e.).

Appellants assert that the Letter Agreement is a valid, fully integrated contract because it contains all material terms and that the recording of the telephone conversation constitutes inadmissible parol evidence that Brumfield used to contradict the express terms of the enforceable Letter Agreement. We address this contention first because the parol evidence rule only applies to valid, written, integrated contracts. *See West*, 573 S.W.3d at 243. Appellee contends the Letter was nothing more than an "agreement to agree" and not a valid integrated written agreement. Appellee contends that because the Appellants failed to execute the Amended Company Agreement, the Appellants never became owners of Tachus and the remaining conditions outlined in the Letter Agreement were never met.

In *Fischer v. CTMI, L.L.C.*, the Texas Supreme Court explained contract enforceability in the context of agreements to agree as follows:

> . . . . To be enforceable, a contract must address all of its essential and material terms with "a reasonable degree of certainty and

14

definiteness." Although it is difficult to say "just what particularity or refinement of terms is essential to meet the requirement of 'reasonable degree of certainty,'" . . . a contract must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound. And even when that intent is clear, the agreement's terms must also be sufficiently definite to "enable a court to understand the parties' obligations," . . . and to give "an appropriate remedy" if they are breached[.]

However, a contract need only be definite and certain as to the terms that are "material and essential" to the parties' agreement. Other courts have held that, under Texas law, material and essential terms are those that parties would reasonably regard as "vitally important ingredient[s]" of their bargain. We agree but we note that "[t]he material terms of a contract are determined on a case-by-case basis," . . . and "[e]ach contract should be considered separately to determine its material terms."

. . .

"It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree." If an agreement to make a future agreement is not sufficiently definite as to all of the future agreement's essential and material terms, the agreement to agree "is nugatory." Thus to be enforceable, an agreement to agree, like any other contract, "must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations."

Conversely, "[a]greements to enter into future contracts are enforceable if they contain all material terms." When an "agreement to enter into a future contract already contains all the material terms of the future contract," courts can determine and enforce the parties' obligations, and concerns about indefiniteness and reasonable certainty do not arise. So an agreement that contains all of its essential terms is not unenforceable merely because the parties anticipate some future agreement.

479 S.W.3d 231, 237-38 (Tex. 2016) (citations and footnotes omitted). Whether an

agreement is an enforceable contract is generally a question of law. *Allamon Tool*

*Co. v. Derryberry*, No. 09-06-200-CV, 2007 Tex. App. LEXIS 8858, at *5 (Tex.

15

App.—Beaumont Nov. 8, 2007, no pet.) (mem. op.) (citing *Meru v. Huerta*, 136 S.W.3d 383, 390 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.)).

The September 30, 2018 Letter Agreement states that Plaintiffs and Brumfield agreed that (1) upon the execution of the Letter Agreement they will execute and deliver to each other the Use and Management Agreement to be effective as of the date hereof and (2) that on or before 5 p.m. on October 12, 2018 the Plaintiffs and Brumfield will execute and deliver to each other an Amended and Restated Company Agreement and Joint Consent of Manager and Members of Tachus Shenandoah, LLC, with the intent that each party will own equal membership interests or units in Tachus Shenandoah and that the parties agree to reimburse any documented cash advances made directly to Tachus Shenandoah, specifically for the Shenandoah FttH project, prior to any other distributions.

The Use and Management Agreement executed by the parties and referenced in the Letter Agreement contains language that outlines a contract for services, and it does not describe or contain terms pertaining to the formation of Tachus or the parties' ownership interests in the company. The only "terms" relating to the formation of the company in the one-page Letter Agreement are found in the clause stating that the parties, on or before October 12, 2018, would execute and deliver to each other an Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC "with the [] intent" that "each

16

Party will own equal Membership interests or units in Tachus Shenandoah[]" and that "[t]he Parties agree to reimburse any documented cash advances made directly to Tachus Shenandoah . . . prior to any other distributions."

As summary judgment evidence, Brumfield attached his deposition transcript wherein he testified that he presented Plaintiffs with a Company Agreement to form the company in 2015, but it was never executed. That unexecuted agreement was thirty-five pages outlining percentage ownership interests and other terms. Brumfield also attached the thirty-four-page Company Agreement that was in effect at the time of the Letter Agreement and it listed Brumfield as the sole manager and member of Tachus, LLC and contained provisions relating to initial membership, ownership interests, procedures for altering the LLC's membership and ownership interests, management duties of the members, and listed Brumfield as owner of 1000 units, with a capital contribution of $1000. The parties do not dispute that the Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC was never executed by the parties.

Only two terms relating to formation or ownership and operation of the company were mentioned in the Letter Agreement, and those two terms were to be included in the Amended and Restated Company Agreement:

    a. Regardless of any past time, material, service, or cost claims, that each Party will own equal Membership interests or units in Tachus Shenandoah, and;

b. The Parties agree to reimburse any documented case advances made directly to Tachus Shenandoah, specifically for the Shenandoah FttH project, prior to any other distributions.

One of the two terms to be included in the Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC was that the Plaintiffs and Brumfield should each own "equal" Membership interests or units, but no percentages were stated.[3] The Letter Agreement could not have replaced the earlier executed Company Agreement listing Brumfield as sole member and manager because that Company Agreement included material terms such as ownership units, capital contributions, and the effective date of the formation of the company. Clearly on its face, the Letter Agreement anticipated the details regarding any ownership would be contained in the Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC, which was something that had to be prepared and executed later. On this record, we conclude that the Letter Agreement is merely an agreement to enter into a future contract (the Amended and Restated Company Agreement and Joint Consent of Managers and Members of Tachus Shenandoah, LLC) or an "agreement to agree," and the Letter Agreement does not address all of the essential

---

[3] By contrast, in Plaintiffs' declaratory action the Plaintiffs request that the trial court declare that Ming (who is not mentioned in the Letter Agreement and who is not a party to the Letter Agreement) has a 5% ownership interest, Merzi a 31 1/3% ownership interest, Sammons a 31 1/3% ownership interest, and Brumfield a 31 1/3% ownership interest.

18

and material terms with "'a reasonable degree of certainty and definiteness.'" *See Fischer*, 479 S.W.3d at 237 (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (Tex. 1955)). Under these circumstances, the terms are not sufficiently definite to "'enable a court to understand the parties' obligations,' . . . and to give 'an appropriate remedy' if they are breached[.]" *See id.* (quoting Restatement (Second) of Contracts § 33(2) (1981)). The Letter Agreement is not a written integrated contract with sufficiently definite terms, nor is it "complete on its face." So, the parol evidence rule does not bar the trial court's consideration of the telephone call. *See West*, 573 S.W.3d at 243. We overrule Appellants' issue on appeal.

Appellee's Cross-Appeal on Attorney's Fees

On cross-appeal, Brumfield argues that the trial court abused its discretion in denying Brumfield's request for attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code because the award of attorney's fees was necessary, reasonable, equitable, and just. He also asserts he was not required to segregate recoverable from unrecoverable fees, and even if segregation was required, the district court should have awarded the segregated amount based on the evidence. Appellants opposed the request for attorney's fees and argued the award was not equitable and just. In response to Appellants' argument that an award of attorney's fees to Brumfield was not equitable and just, Brumfield argued that Merzi knew he had the recorded conversation with Brumfield, both Appellants were aware

19

they held no ownership in Tachus Shenandoah before they brought suit, the lawsuit should have never been filed, and an award of attorney's fees "would only be fair when considering the circumstances."

We review an award or denial of attorney's fees under the Declaratory Judgments Act for an abuse of discretion. *Ullrich v. Meijer*, No. 09-21-00090-CV, 2022 Tex. App. LEXIS 8805, at \*13 (Tex. App.—Beaumont Dec. 1, 2022, no pet.) (mem. op.) (citing *Forest Hills Improvement Ass'n Inc. v. Flaim*, No. 09-18-00199-CV, 2019 Tex. App. LEXIS 8478, at \*4 (Tex. App.—Beaumont Sept. 19, 2019, no pet.) (mem. op.)). Under the Declaratory Judgments Act, a trial court has broad discretion in deciding whether to award attorney's fees. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code Ann. § 37.009); *Ullrich*, 2022 Tex. App. LEXIS 8805, at \*13; *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The attorney's fees must be reasonable, necessary, equitable, and just. *Bocquet*, 972 S.W.2d at 21. A reviewing court will reverse an award of attorney's fees under the Declaratory Judgment Act only if the lower court abused its discretion by either (1) awarding fees when there was insufficient evidence that the fees were reasonable and necessary or (2) acting arbitrarily, unreasonably, or without regard to guiding legal principles in its determination that the fees awarded were equitable and just. *Id.* A trial court may decide that fees should not be awarded

20

if such an award would not be equitable and just, in light of the circumstances. *Ullrich*, 2022 Tex. App. LEXIS 8805, at \*13. The determination of whether an award of attorney's fees would be equitable and just is not susceptible to direct proof but instead is a matter of fairness, in light of the circumstances. *Id.* (citing *Anglo-Dutch Petroleum Int'l, Inc.*, 522 S.W.3d at 494). Even if the evidence is uncontroverted that the attorney's fees incurred are reasonable and necessary, a court may decide it is not equitable or just to award them. *Id.* Since an award of attorney's fees is not dependent on a finding that a party has substantially prevailed, the trial court is not required to award attorney's fees to a prevailing party in a declaratory judgment action. *Id.*; *see also Bocquet*, 972 S.W.2d at 20 ("The Declaratory Judgments Act does not require an award of attorney fees to the prevailing party.").

Brumfield has the burden of establishing that the trial court abused its discretion in denying an award of attorney's fees. *See Ullrich*, 2022 Tex. App. LEXIS 8805, at \*14 (citing *Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.)). When, as here, no findings of fact and conclusions of law were requested or filed, we imply all necessary findings and conclusions to support the trial court's judgment. *See Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). Here, the trial court denied Brumfield's request for attorney's fees under the Declaratory Judgments Act, and implicitly found that it would not be equitable and just to award him attorney's fees. *See*

21

*Armour Pipe Line Co. v. Sandel Energy, Inc.*, No. 14-20-00412-CV, 2023 Tex. App. LEXIS 3300, at *55 (Tex. App.—Houston [14th Dist.] May 16, 2023, no pet. h.) (op. on reh'g) (noting that in denying the parties' request for attorney's fees under the Declaratory Judgments Act, "[t]he trial court impliedly determined that it would not be equitable and just to award attorney's fees to any party.") (citing *Kings River Trail Ass'n v. Pinehurst Trail Holdings, L.L.C.*, 447 S.W.3d 439, 451-52 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)). On this record, the trial court in its broad discretion could have reasonably concluded that the parties had legitimate positions and arguments and that it was fair and equitable that Brumfield bear the cost of his own attorney's fees. *See, e.g.*, *Sunday Canyon Prop. Owners Ass'n v. Annett*, 978 SW.2d 654, 659 (Tex. App.—Amarillo 1998, no pet.) (no error not to award attorney's fees under section 37.009 where both parties had "legitimate rights to pursue"). Accordingly, we conclude there was no abuse of discretion by the trial court in denying Brumfield attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code.[4] We overrule Appellee's cross-issue. And we affirm the trial court's judgment.

---

[4] Based on our disposition of this issue, we need not address Brumfield's contention that he was not required to segregate recoverable fees or that they were discernable from the evidence. *See* Tex. R. App. P. 47.1.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 11, 2022
Opinion Delivered June 22, 2023

Before Golemon, C.J., Johnson and Wright, JJ.