In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-23-00123-CV
_____

## ADRIAN EVANS AND CYNTHIA EVANS, Appellants

## V.

## DAVID LIVINGSTON AND MIRANDA LIVINGSTON, Appellees

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. 21DC-CV-00818**

## MEMORANDUM OPINION

Adrian Evans and Cynthia Evans ("Evans") and other property owners (collectively, the "Evans parties") sued David Livingston and Miranda Livingston ("Livingston"), alleging a violation of the restrictive covenants that applied to their subdivision. Livingston answered and counterclaimed against Evans, contending that Evans violated the restrictive covenants. Both parties sought injunctive and

1

declaratory relief and attorneys' fees. Livingston moved for summary judgment, which the trial court partially granted in an interlocutory order.

Pursuant to the parties' joint request, the trial court later granted a final judgment making its prior interlocutory order final and denying the injunctive and declaratory relief and attorneys' fees sought by both parties.

In four appellate arguments, Evans contends that the trial court erred in (1) denying a hearing on his Motion for New Trial, (2) granting Livingston's Motion for Summary Judgment, (3) failing to enter Findings of Fact and Conclusions of Law, as requested, and (4) signing a judgment that was not final.[1] Livingston raised two additional cross points addressing the trial court's denial of attorneys' fees and its failure to decide whether Evans violated the restrictions. We affirm the trial court's judgment.

## BACKGROUND

In 1978, W. R. Properties, Inc. ("Developer") made a Declaration of Covenants, Conditions, and Restrictions for Shady Oaks Subdivision ("Declaration"), and had that Declaration recorded in the property records of Liberty County, Texas on November 15, 1978. In pertinent part, the Declaration provides:

> NOW, THEREFORE, IT IS HEREBY DECLARED that all of the property described above . . . shall be held, sold and conveyed, subject

---

[1] The appeal is filed in the names of Adrian and Cynthia Evans, only. The additional property owners who were Plaintiffs in the trial court are not parties to the appeal.

to the following easements, covenants, restrictions and conditions which are for the purpose of protecting the value and desirability of, and which shall run with, the real property and shall be binding on all the parties having any right, title or interest in or to the above-described property or any part thereof, and their heirs, successors and assigns, and which easements, restrictions and conditions shall inure to the benefit of Developer:

1. All lots located within the Subdivision shall be used for residential purposes only, and no business of any type, kind or character shall be operated thereon, nor shall any lot be used for any type of commercial purposes, except by written approval of Developer, and as hereinafter set forth. This restriction shall not apply to lots adjoining F.M. Highway Nos. 1008 and 2797. Without any exception, no business shall sell alcoholic beverages for "open-premises" consumption.

. . . .

15. The following provision shall apply to all lots in the Subdivision, except . . . Lots Nos. Twenty-five (25) through Thirty-three (33) and Lots Nos. Thirty-eight (38) through Sixty-three (63). No residence constructed on a lot shall be of less than twelve hundred (1200') square feet of covered floor space, exclusive of carport, garage, patio and porch, and all residences shall be built on a concrete slab or concrete pier. Each residence shall be built out of brick, stone, or some other type of masonry or painted or stained redwood, cedar, finished lumber, cypress, or treated pine logs. Lot owners shall furnish Developer with the plans and Specifications of all structures, including residences, which the lot owner plans to build or locate on the property, and Developer must approve such plans and specifications in writing prior to the start of construction or location of the structure.

16. The following provisions shall apply only to Lots Nos. Twenty-five (25) through Thirty-three (33) and Lots Nos. Thirty-eight (38) through Sixty-three (63) of said Subdivision:

    (a) One (1) and only one (1) mobile home, being a minimum of eight (8') feet wide by at least thirty-five (35') feet long,

shall be allowed on a lot, and may be used as a residence only. The mobile home is to [be] set up in a permanent manner; that is, on a concrete slab or on a concrete pier or good quality concrete blocks. New or freshly painted skirting must be placed around at least three (3) sides of the mobile home, those being the side that faces the front property line and the two (2) sides that face the side property lines.

(b) If and whenever a lot owner chooses to build a permanent residence on said property, the one (1) and only one (1) mobile home shall be allowed to remain on the property until the permanent residence can be constructed, such period not to exceed one (1) year unless a time extension is granted by the original Developer. Such residence shall be constructed in compliance with the covenant set forth in paragraph "15" above.

17. Developer or any lot owner may enforce these restrictions by a proceeding in law or in equity. The invalidation of any one or more of the above restrictions and covenants by paramount authority shall not affection [sic] or alter any of the remaining restrictions and covenants. The restrictions and covenants shall be construed as covenants running with the land, and they shall be enforceable, either at law or in equity; and they shall be binding upon the purchaser of each lot, their heirs, legal representatives and assigns. The rights and privileges of Developer shall pass to and be binding upon Developer's successors and assigns.

In 1991, Adrian and Cynthia Evans bought lot 101, and in 2021, David and Miranda Livingston bought lots 106, 107, and 108 in the Shady Oaks Subdivision. In May 2021, David Livingston's parents purchased a 1,900 square foot modular home and placed it on lot 107. They modified this prefabricated home by placing it on a concrete slab and by installing composite shingle roofing and stone and Hardie plank siding, which Livingston's expert, Ken Manfredi, ("Manfredi") described as

4

"a concrete composite siding," and a "fiber cement siding." He further stated that the carport and porch were constructed out of cedar.

Evans objected to Livingston's decision to place a prefabricated modular home on lot 107 and sued the Livingstons, contending that the restrictive covenants governing the subdivision did not permit a mobile home on lot 107, since, according to the Evans, mobile homes were allowed on lots twenty-five through thirty-three and thirty-eight through sixty-three, only. Several Shady Oaks property owners later joined Evans's suit.

Livingston answered and counterclaimed against Evans, alleging that (1) the structure on lot 107 met the deed restrictions; (2) the restrictions in paragraph 16 applied only to lots twenty-five through thirty-three and lots thirty-eight through sixty-three, and therefore did not apply to lot 107; and (3) Evans's home business, which provided swimming lessons on lot 101, violated the restriction that property within the Shady Oaks subdivision be used for residential purposes, only, not business or commercial purposes.

Livingston moved for a traditional summary judgment, arguing that the structure on lot 107 complied with the restrictive covenants, thereby negating the Evans parties' contrary argument. In the alternative, Livingston argued that the restrictions specifically referencing lots twenty-five through thirty-three and lots thirty-eight through sixty-three did not apply to lot 107. In support of that position,

they attached David Livingston's unsworn declaration as well as the unsworn declaration of their real estate expert, Manfredi.

In David Livingston's declaration, he stated that the home exceeded 1,200 square feet, that it was "built on a concrete slab and pier and beam foundation[,]" and that it "would be built out of brick, stone, or other masonry or painted or finished lumber[,]" with James Hardie siding and a stone exterior. He continued, stating that the structure had a composite shingle roof, two-by-six wall studs, and that the interior walls were made of painted wallboard. Livingston supported his contention about swimming lessons on the Evans property with printouts from social media sites.

Manfredi's declaration sets out his experience as a builder and real estate broker/owner operator. He states that he has "built and rehabbed over 50 million dollars in residential property through the greater Houston market[,]" and that he is "familiar with various types of construction materials, types of foundations, and general construction practices." Based on his inspection of the structure on lot 107, Manfredi described the structure as

> a prefabricated home that has been extensively modified. It is situated on a concrete slab foundation and a concrete pier and beam foundation. The Home is framed with 2x6 wooden studs. The exterior of the Home is James Hardie siding and stone. The Home is nearly 2,000 square feet in living space, excluding the patio and carport.
>
> . . . .

The siding is a concrete composite siding, which is a top-of-the-line fiber cement siding. Fiber cement is a composite material comprised of cellulose wood fibers, sand, and water. The carport and porch are also constructed out of cedar.

. . . .

Further, it is my opinion that the Home should not be considered a mobile home. The Home has undergone significant modifications. This framing was prefabricated; however, the entire Home has been modified – from the foundation to the roof. The Home has a slab and pier and beam foundation. It could not be removed from the foundation without significant expense and effort. Further, the siding is stone and Hardie plank. Lastly, the roof is composite shingles. These are construction features that are not seen in mobile homes – rather, these are elements of traditional home construction. In my inspection of the Home, it was not readily apparent that this was a prefabricated home. The only potential element that shows this is a prefabricated home is the footprint or the dimensions of the Home. Otherwise, the Home has all the features of a standard construction home. It is my opinion that this is not a mobile home.

Lastly, during my inspection of the Home, I had the opportunity to view other homes within the Shady Oaks Subdivision. Based on my review of the other homes, the Home is constructed to the same or similar standards of the other homes. More particularly, neighboring homes use the same James Hardie siding and stone exterior.

The Evans parties responded to Livingston's Motion for Summary Judgment, claiming that there was a genuine issue of material fact about the Livingstons' structure conforming to the restrictive covenants and how the restrictions would apply to a mobile home on lot 107. The Evans parties rely on and attach the affidavits of Adrian and Cynthia Evans, which, after setting out that the affiants are of legal age, sound mind, and have personal knowledge, state:

7

[We] gave notice to the Livingston's [sic] that mobile homes, modular homes, were not allowed on lot 107.

The Livingstons moved the mobile home onto lot 107 in July 2021. The Livingston's [sic] were asked not to put the mobile home in the neighborhood. They were advised that mobile homes were allowed on lots 25-33 and 38-63. Lot 107 is not one of the permissible lots. They moved the mobile home in, started to set it up, and placed it over a pipeline. They had to move the mobile home off the pipeline easement and kept trying to say they were moving it on lot 107.

The mobile home was not built on lot 107, but was built by Palm Harbor Homes at a different location than lot 107. See Response to Admissions No. 2 Exhibit "E" and "F" attached hereto.

The mobile home is not built out of brick, stone, or some other type of masonry or painted or treated redwood, cedar, finished lumber, cypress, or treated pine logs.

Exhibits E and F, referenced in David and Cynthia Evans' affidavits, are Livingston's admissions, which establish that Livingston received a copy of the deed restrictions and that the structure in question is a manufactured home purchased from Palm Harbor Villages.

Both parties objected to the other's summary judgment evidence. The Evans parties objected that David Livingston's supporting declarations were "not easily controverted, contain[ed] hearsay, contain[ed] legal conclusions, and [were] not supported by legally sufficient evidence." The Evans parties further objected that Livingston's unsworn declarations contained "[u]nsupported conclusory statements" and were "not proper Summary Judgment evidence." Livingston objected that the Evans parties' response to the Motion for Summary Judgment was

8

inadequate because the attached affidavits were conclusory and did not explain the basis for their purported personal knowledge. Livingston also objected that the pleadings on which the Evans parties sought to rely are not competent summary judgment evidence.

Although the appellate record does not include the trial court's order on the parties' objections, the Evans parties' Motion for Clarification states that the trial court sustained their objection number four to Livingston's Motion for Summary Judgment (the social media pages about swimming lessons), and overruled objections two, three, five, and six. The Evans parties' objection four addresses authentication of the social media pages Livingston attached to their motion, while the Evans parties' remaining objections attack the Livingston declarations as containing hearsay, legal conclusions, and unsupported conclusory statements, and as "lack[ing] a jurat" and being "not easily controverted[.]" Although the appellate record omits the trial court's ruling on the parties' objections, the trial court did grant an interlocutory summary judgment in favor of Livingston

> as to the claims asserted by Plaintiff[]s Adrian and Cynthia Evans is GRANTED. The Court RENDERS judgment denying Plaintiffs' request for permanent injunction and declaratory judgment action in full. Counter-Plaintiffs' Motions for Summary Judgment on their request for permanent injunction and declaratory relief against Counter-Defendants Adrian Evans and Cynthis Evans is DENIED. All remaining claims asserted by Counter-Plaintiff shall proceed to trial.

9

The parties later determined that it would be a more efficient use of resources for the trial court to make its interlocutory order final and appealable. The trial court's Final Judgment, like the interlocutory order, denied both parties' requests for a permanent injunction, declaratory relief, and attorneys' fees. It also taxed court costs against the party incurring them, and stated "[t]his is a Final Judgment disposing of all issues and all parties, all prior interlocutory orders of the Court in this cause are hereby made final, the temporary injunction entered in this matter is dissolved, and this judgment is appealable."

Thereafter, the Evans parties moved for a new trial and requested Findings of Fact and Conclusions of Law, both of which the trial court denied. In denying this Request for Findings of Fact and Conclusions of Law, the trial court stated

> The central issues in this case were decided by interlocutory summary judgment. The parties, by motion to enter an agreed final judgment, effectively non-suited remaining claims for atty fees under Chapter 37. Findings of Fact are not proper in a case decided by summary judgment. Court declines to make findings.

When the Evans parties filed their Notice of Past-Due Findings of Fact and Conclusions of Law, the trial court again denied them, stating "Court will not make factual findings when judgment is based on summary judgment. Findings are unnecessary and are contrary to summary judgment practice."

**ANALYSIS**

Issue One: The Motion for New Trial

The Evans parties' Motion for New Trial repeats their previous allegations about (1) the deed restrictions prohibiting mobile homes on certain lots; and (2) the devaluation of their own homes. The Evans parties support the Motion for New Trial with Cynthia Evans's affidavit, which states:

> I am Cynthia Evans and I am of majority age and capable of making this sworn affidavit. I have personal knowledge of the facts contained in the Motion for New Trial to which this verification is attached. The facts and allegations in that petition are, to the best of my knowledge, true and correct.

In their initial issue on appeal, Evans posits that the trial court erred in failing to conduct an evidentiary hearing on the Motion for New Trial. Evans does not, however, set forth in either the Motion for New Trial or appeal what evidence and arguments the trial court would have heard had it conducted the requested hearing.

We review a trial court's decision on a motion for new trial for abuse of discretion. *B. Gregg Price, P.C. v. Series 1 - Virage Master LP*, 661 S.W.3d 419, 423 (Tex. 2023) (citation omitted); *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (citation omitted); *Vargas v. Applied Mach. Corp.*, No. 09-15-00049-CV, 2016 Tex. App. LEXIS 1151, at *10 (Tex. App.—Beaumont Feb. 4, 2016, no pet.) (mem. op.). "A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules

11

or principles." *Vargas*, 2016 Tex. App. LEXIS 1151, at *10 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985)).

In evaluating Evans' complaint that the trial court did not hold a hearing on their Motion for New Trial, we note that Evans has cited no authority requiring a trial court to hold an oral hearing on such a motion, and we have found none. *See Broussard v. Vicknair*, No. 09-21-00391-CV, 2023 Tex. App. LEXIS 9371, at **63–65 (Tex. App.—Beaumont Dec. 14, 2023, no pet.) (mem. op.) (affirming a similar issue for failure to cite applicable authority); Tex. R. App. P. 38.1(i).

The case authority Evans cites is inapposite to the argument they present in that the cited authority addresses the requirement of due process of law in the context of a trial on the merits of a claim. However, Evans chose to resolve their case by summary judgment and not by trial. Based on this record, we hold that Evans has not shown that they were entitled to an oral hearing on their motion for new trial. *See Broussard*, 2023 Tex. App. LEXIS 9371, at **63–65. Accordingly, we conclude the trial court did not abuse its discretion in denying an oral hearing on Evans' Motion for New Trial. We overrule their first issue.

Issue Two: The Summary Judgment

Evans next argues that the trial court should not have granted Livingston's Traditional Motion for Summary Judgment.

We review both summary judgment orders and a trial court's construction of a restrictive covenant de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) (summary judgment); *Ullrich v. Meijer*, No. 09-21-00090-CV, 2022 Tex. App. LEXIS 8805, at *11 (Tex. App.—Beaumont Dec. 1, 2022, no pet.) (mem. op.) (restrictive covenant). When, as here, the trial court's order does not specify the basis of its decision, we must affirm the judgment if any of the movant's theories is meritorious. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

To prevail on a traditional motion for summary judgment, a movant must establish that no genuine issue of material fact exists so that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *see also Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). Summary judgment is appropriate if the movant conclusively negates at least one essential element of the plaintiff's claim. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 79 (Tex. 2015). Only when the movant meets its initial burden, does the burden shift to the nonmovant to present evidence raising a genuine issue of material fact. *See Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 514 (Tex. 2022) (citations omitted); *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every

13

reasonable inference and resolve any doubts in the nonmovant's favor." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citations omitted). We will therefore consider whether any grounds asserted by Livingston support the summary judgment.

Both case law and the Texas Property Code govern the interpretation of deed restrictions. *See* Tex. Prop. Code Ann. § 202.003(a); *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 283, 288-89 (Tex. 2018); *Wilmoth v. Wilcox*, 734 S.W.2d 656, 657–58 (Tex. 1987). The cited section of the Property Code states that "[a] restrictive covenant shall be liberally construed to give effect to its purposes and intent[,]" while case law addressing restrictive covenants indicates that courts do not favor restrictions on the free use of one's own land, and that an ambiguity in a deed restriction will be strictly construed against the party seeking to enforce it. *See* Tex. Prop. Code Ann. § 202.003(a); *Tarr*, 556 S.W.3d at 279–83. Although we seek to implement the drafters' intent as reflected by the language they chose when writing the restrictive covenant, we may not enlarge, extend, stretch or change the meaning of those words in construing the covenant. *Tarr*, 556 S.W.3d at 280.

On appeal, Evans contends that summary judgment was improper because Livingston's summary judgment evidence

> [did] not comply with the requirements of T.R.C.P. Rule 166(a) [sic] the summary judgment rule, and particularly to Section (e) [sic] which provides as follows (referring to the required form of affidavits) that such affidavit . . . shall set forth such facts as would be admissible in

14

> evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.[] Appellate courts have long held that hearsay will not support a summary judgment. [] *Youngstown Sheet & Tube Co. v. Penn*, 363 S.W.2d 230 (Tex. [] 1962).

Evans then reiterates the argument against mobile homes on lot 107 but does not elaborate on their contention that Livingston's summary judgment evidence was inadequate. In their brief, Evans cites *George v. Cypress Springs Prop. Owners Ass'n*, 668 S.W.3d 877 (Tex. App.—El Paso 2023, no pet.), to support the proposition that manufactured or mobile homes were expressly prohibited by the deed restrictions. However, the *George* case is distinguishable from the matter before us on this appeal. The deed restrictions applying to the Livingstons are different from those in the *George* case which specifically defined mobile or manufactured homes and applied to all homes in the subdivision: "[t]he term 'dwelling' does not include double wide manufactured homes, or single wide mobile homes, and said homes are not permitted within the Subdivision." *Id*. at 881.

Here, in contrast, the deed restrictions applying to David and Miranda Livingston required only that homes be "built out of brick, stone, or some other type of masonry or painted or stained redwood, cedar, finished lumber, cypress, or treated pine logs." The Livingston's expert witness, Ken Manfredi, testified by affidavit that David and Miranda Livingston's home was compliant with the deed restrictions: "[A]fter a thorough evaluation of the Home, I determined that the Home is approximately 2,000 square feet; is built on a concrete pad (and placed on a pier and

15

beam); has a composite roof; and Hardie board siding. The foregoing elements comply with the building requirements established by paragraph 15 of the Deed Restrictions." This expert testimony was unambiguous and was not rebutted by the Evans' in response to the motion for summary judgment. The undisputed summary judgment evidence supports the trial court's determination that the structure on David and Miranda Livingston's property complied with the unambiguous deed restrictions. *Tarr*, 556 S.W.3d at 289 (Whether a covenant is ambiguous must be determined based upon the plain language set forth in the covenant as seen in light of the circumstances present when it was drafted.).

In addition, the Evans parties alleged Livingston's evidence contained hearsay and conclusory declarations. However, in their briefs to this Court, Adrian and Cynthia have not supported those allegations with case-specific briefing and applicable authority. Evans consequently have waived their right to complain about the summary judgment evidence presented by Livingston. *See Price v. Gardner*, No. 09-24-00193-CV, 2025 Tex. App. LEXIS 181, at *3 (Tex. App.—Beaumont Jan. 16, 2025, no pet.) (mem. op.) (citations omitted). We overrule their second issue.

Issue Three: The Requested Findings of Fact and Conclusions of Law

In issue three, Evans argues that the trial court erred in failing to make Findings of Fact and Conclusions of Law, despite their timely request.

Since a summary judgment indicates that there are no genuine issues of material fact, and since the trial court entered a summary judgment in this matter, findings of fact were not appropriate. *See Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994) ("findings of fact and conclusions of law have no place in a summary judgment proceeding[]"); *see also Albers v. State Farm Mut. Auto. Ins. Co.*, No. 09-23-00230-CV, 2024 Tex. App. LEXIS 5092, at **9–10 (Tex. App.— Beaumont July 18, 2024, no pet.) (mem. op.) (same). The trial court recognized this principle in its handwritten notations on Evans' Requests for Findings of Fact and Conclusions of Law and on Evans' Notice of Past Due Findings of Fact and Conclusions of Law, set forth above.

Since the trial court was not required to make findings of fact or conclusions of law in this matter, we conclude the trial court did not err in failing to do so. We overrule Evans' third issue.

Issue Four: Finality of the Judgment

In this issue, Evans appears to address the finality of the trial court's judgment. Since "the finality of a judgment raises the issue of jurisdiction, it is a legal question we review de novo." *Redwine v. Peckinpaugh*, 535 S.W.3d 44, 48 (Tex. App.— Tyler 2017, no pet.). A judgment is final if it disposes of all claims and parties or if it includes "unequivocal finality language that expressly disposes of all claims and parties." *See Sealy Emergency Room, L.L.C. v. Free Standing Emergency Room*

17

*Managers of Am., L.L.C.*, 685 S.W.3d 816, 820 (Tex. 2024) (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93, 200 (Tex. 2001)).

The trial court's Final Judgment, expressly states:

> IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Plaintiffs' request for a permanent injunction and declaratory relief is hereby DENIED.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Counter-Defendants' request for permanent injunction and declaratory relief is hereby DENIED.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Plaintiffs/Counter-Defendants' claim for attorneys' fees is hereby DENIED.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants/Counter-Plaintiffs' claim for attorneys' fees is hereby DENIED.
>
> IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all costs of court are hereby taxed against the party incurring the same.
>
> This is a Final Judgment disposing of all issues and all parties, all prior interlocutory orders of the Court in this cause are hereby made final, the temporary injunction entered in this matter is dissolved, and this judgment is appealable.

*Lehmann* holds that a judgment is final if it states, "with unmistakable clarity that it is a final judgment as to all claims and all parties." 39 S.W.3d at 192–93. Under the *Lehmann* standard, the trial court's judgment disposing of "all issues and all parties," and stating that the judgment is final and appealable sufficed to render the judgment final. *See id.* at 192–93. Since the trial court's judgment contained clear and

18

unequivocal language of finality and addressed not only the parties' claims but the counterclaims and attorneys' fees, we conclude it is a final judgment. *See Lehmann*, 39 S.W.3d at 192-93. We overrule Evans' fourth issue.

Counterpoint One: The Attorney's Fees

The Uniform Declaratory Judgments Act ("UDJA") states that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(a), 37.009. When Livingston counter-claimed against Evans, they sought declaratory relief and attorneys' fees pursuant to the UDJA. After the trial court declined to award Livingston attorneys' fees, they appealed that denial, arguing the trial court abused its discretion in denying those fees because it was "equitable and just" to award them due to the disparity in financial resources between Livingston and the multiple property owners who joined Evans' suit.

We review a denial of attorney's fees under the UDJA for an abuse of discretion. *See Forest Hills Improvement Ass'n v. Flaim*, No. 09-18-00199-CV, 2019 Tex. App. LEXIS 8478, at *4 (Tex. App.—Beaumont Sep. 19, 2019, no pet.) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or without regard to guiding rules or principles. *See id.* at **4-5. Under the UDJA, a trial court has broad discretion in deciding whether to award attorney's fees. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code Ann.

§ 37.009); *Anglo-Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). A court may decide that fees should not be awarded if such an award would not be equitable and just in light of all the circumstances. *See Flaim*, 2019 Tex. App. LEXIS 8478, at *5. The determination of whether an award of attorney's fees would be equitable and just is not susceptible of direct proof but instead is a matter of fairness in light of all the circumstances. *See Anglo-Dutch Petroleum Int'l, Inc.*, 522 S.W.3d at 494. Even if the evidence is uncontroverted that the attorney's fees incurred are reasonable and necessary, a court may decide it is not equitable or just to award them. *See Flaim*, 2019 Tex. App. LEXIS 8478, at *5 (citations omitted). Additionally, since an award of attorney's fees does not depend on a finding that a party has substantially prevailed, the trial court is not required to award attorney's fees to a prevailing party in a declaratory judgment. *See Anglo-Dutch Petroleum Int'l, Inc.*, 522 S.W.3d at 494.

Livingston bore the burden of establishing that the trial court abused its discretion in denying an award of attorney's fees. *See Sanchez v. AmeriCredit Fin. Servs., Inc.*, 308 S.W.3d 521, 526 (Tex. App.—Dallas 2010, no pet.) (citation omitted). Livingston cites the financial disparity between themselves and the multiple plaintiffs as the ground for awarding the fees they incurred in defending the case. Livingston has not, however, cited to applicable case authority approving a fee

award on this basis. *See* Tex. R. App. P. 38.1(i). Livingston also has not explained what applicable guiding rules or principles the trial court allegedly disregarded but has instead stated only that it would be just and equitable to award fees. While we agree that the UDJA permits a trial court to award attorney's fees, it does not require the court to do so. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009; *Bocquet*, 972 S.W.2d at 20 (contrasting the discretion in the UDJA with statutes requiring a fee award).

In *Guajardo v. Hitt*, as in this case, the trial court denied recovery, including attorney's fees, to all parties. 562 S.W.3d 768, 781-82 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). The *Guajardo* appellees, the prevailing parties in the trial court, argued on appeal that the trial court abused its discretion in denying their fee request, claiming that "'there was absolutely no basis to deny the statutorily-authorized attorney's fees for Cross-Appellants' successful defense of the declaratory judgment claim.'" *See id.* In affirming the trial court's denial, our sister court explained that a fee award in a declaratory judgment matter was discretionary with the trial court. *See id.* at 782–83 (citations omitted). The court observed that "a trial court, in the exercise of its discretion, 'may award attorney's fees to the prevailing party, may decline to award attorney's fees to either party, or may award attorney's fees to the nonprevailing party, regardless of which party sought declaratory relief.'" *Id.* at 783 (citation omitted). Applying this standard to the

21

instant case indicates that absent a showing that the trial court abused its discretion, its decision should stand. *See id.*

Since the trial court was not required to award attorneys' fees, and since Livingston did not meet their burden to show that the trial court abused its discretion by denying fees, we overrule Livingston's initial counterpoint.

Counterpoint Two: The Evans' Prohibited Use

Livingston further contends that the trial court erred in failing to determine that Adrian and Cynthia Evans violated the deed restrictions by operating a business and conducting swimming lessons on their property and that Livingston is entitled to declaratory and injunctive relief for this reason.

We review a trial court's denial of a request for injunctive relief for an abuse of discretion, meaning we ask whether the trial court acted in an unreasonable or arbitrary manner or misapplied the law to the facts. *See Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690–91. (Tex. App.—Houston [1st Dist.] 2007, no pet.). A trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence reasonably supports the trial court's decision. *Id.* at 691 (citation omitted). The party seeking an injunction has the burden to show a clear equity demands the injunction. *Id.* Injunctive relief is appropriate upon a showing of (1) the existence of a wrongful act; (2) the existence of imminent

22

harm; (3) the existence of irreparable injury; and (4) the absence of an adequate remedy at law. *Id.* at 690-91.

Assuming without deciding that conducting swimming lessons violates the deed restriction against commercial use of the property, Livingston did not show that Adrian and Cynthia Evans were doing so. Livingston's summary judgment evidence does not establish that Adrian and Cynthia Evans were conducting swimming lessons and operating Jenny Pye ISR on their property. Livingston instead showed, through Evans' responses to Requests for Admissions, that a designated photograph depicted Adrian and Cynthia Evans' property. Although the photograph is identified as being "attached hereto as Exhibit A," no photographs are attached to Evans' responses to Livingston's Requests for Admissions or Evans' responses to them. We therefore cannot determine what photograph was attached as Exhibit A and admittedly reflected Adrian and Cynthia Evans' property. On this record, we cannot agree that Livingston proved Adrian and Cynthia Evans were using their property for a business purpose. *See Jim Arnold Corp. v. Bishop*, 928 S.W.2d 761, 770 (Tex. App.—Beaumont 1996, no pet.) (referencing the effect of the appellate court having nothing to review).

Given the lack of evidence that Adrian and Cynthia Evans were committing a wrongful act by operating a business in violation of the deed restrictions, Livingston was not entitled to injunctive relief. *See Linden*, 222 S.W.3d at 690–91 (injunctive

23

relief requires a wrongful act). The trial court therefore correctly denied Livingston the injunctive relief sought. We overrule Livingston's second counterpoint.

## CONCLUSION

Having overruled all of Evans' and Livingston's issues on appeal, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on November 21, 2024
Opinion Delivered May1, 2025

Before Johnson, Wright and Chambers, JJ.